28 P.3d 375

**UNION PACIFIC CORPORATION and affiliated companies, Plaintiff–Respondent,**

v.

**IDAHO STATE TAX COMMISSION, Defendant–Appellant.**

No. 25876.

Supreme Court of Idaho, Boise, February 2001 Term.

June 27, 2001.

Hon. Alan G. Lance, Attorney General, for appellant. Geoffrey L. Thorpe, Deputy Attorney General, argued.

Hawley Troxell Ennis & Hawley LLP, Boise, for respondent. Richard G. Smith and Eugene A. Ritti argued.

EISMANN, Justice.

The Idaho State Tax Commission appeals the decision of the district court reversing the Tax Commission's assessment of tax deficiencies against the Union Pacific Corporation. The Tax Commission determined that, when apportioning income pursuant to Idaho Code § 63–3027, Union Pacific should not have included revenues from the sale of its accounts receivable within the sales factor and it should have included as business income dividends received from a limited

partnership mining operation. Union Pacific filed this action seeking *de novo* review by the district court. Both parties moved for summary judgment, and the district court granted summary judgment in favor of Union Pacific. The Tax Commission then appealed. We vacate the decision of the district court and remand for further proceedings.

## I.

### STANDARD OF REVIEW

In an appeal from an order of summary judgment, all disputed facts are to be construed liberally in favor of the party opposing the motion, and all reasonable inferences that can be drawn from the record are to be drawn in favor of that party. *Eagle Water Company, Inc. v. Roundy Pole Fence Company, Inc.*, 134 Idaho 626, 7 P.3d 1103 (2000). Summary judgment is appropriate if the pleadings, sworn statements, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*

## II.

### ANALYSIS

Union Pacific is the parent company of a group of corporations engaged in transportation, natural resources, energy, environmental and computer technology, and services. In 1996 the Idaho State Tax Commission assessed income tax deficiencies against the Union Pacific Corporation for the years 1991, 1992, and 1993. At issue was Union Pacific's apportionment of income to Idaho pursuant to Idaho Code § 63-3027. Under that statute, corporations operating both in Idaho and in one or more other states are required to apportion a portion of their business income to Idaho. At issue in this appeal is the apportionment of income arising from two separate transactions.

### A. Did monies received from the sales of accounts receivable constitute sales under Idaho Code § 63-3027(a)(5)?

Union Pacific Corporation is the parent of the Union Pacific Railroad and the Missouri Pacific Railroad. They both ship goods for customers on credit. In 1989 the railroads began selling their accounts receivable in order to generate increased cash flow. In general terms, the railroads created a pool of accounts receivable and sold, without recourse, an undivided interest in the receivables to several banks for an amount that was less than the face value of the receivables. The banks agreed to purchase interests in the accounts receivable until they had paid an agreed-upon maximum sum ($200 million in the first year). The banks issued commercial paper to finance their investment in the receivables, and they filed Uniform Commercial Code financing statements to protect the banks' interests in the receivables. The railroads, however, continued to collect the accounts receivable, and as they were collected the railroads added new receivables to the pool to maintain the face value of the receivables in the pool. The face value of the pool of receivables is kept high enough so that if the railroads discontinued operations, the banks' interests in the receivables would be sufficient for them to recover the money they paid and to pay any liability they have for the payment of interest on the commercial paper that they sold to finance their purchases of the receivables. The railroads also had to pay a $500,000 one-time origination fee and a monthly commitment fee of 0.75% of the unused amount of the banks' $200 million commitment to purchase.

Because the Union Pacific Corporation and the railroads constitute a unitary corporation transacting business in several states, their combined income for tax purposes must be apportioned among those states. Idaho Code § 63-3027 [1] sets forth the procedure for determining what portion of the income is apportioned to, and therefore taxable by, Idaho. The apportionment is based upon a fraction. The numerator of the fraction is

1. All references to Idaho Code § 63-3027 are to the statute *as it existed* during the years at issue (1991–1993). The text of the statute as it then existed can be found at ch. 114, 1985 Idaho Sess. Laws 233.

the total of three factors called the "property factor," the "payroll factor" and the "sales factor." I.C. § 63–3027(i). The property factor is the average value of the taxpayer's real and tangible personal property owned or rented and used in Idaho during the tax period divided by the average of all such property owned or rented and used by the taxpayer everywhere during the tax period. I.C. § 63–3027(j). The payroll factor is the total amount that the taxpayer paid in Idaho for compensation during the tax period divided by the total amount that the taxpayer paid for compensation everywhere during the tax period. I.C. § 63–3027(m). The sales factor is the total sales by the taxpayer in Idaho during the tax period divided by the taxpayer's total sales everywhere during the tax period. I.C. § 63–3027(o). The total of those three factors is then divided by three in order to apportion business income to Idaho. I.C. § 63–3027(i).

Union Pacific included in the sales factor as part of its total sales everywhere the railroads' freight revenues, based upon the accrual accounting method. It also included as part of its total sales everywhere the monies received from the sale of the accounts receivable. At issue in this case is whether the money received from the sale of the accounts receivable should be included as sales when calculating the sales factor. Because the sales of the accounts receivable did not occur in Idaho, including such income as sales will increase the denominator of the sales factor, thereby decreasing the value of the sales factor, thereby decreasing the taxable business income apportioned to Idaho.

■ The district court initially ruled that the sale of the accounts receivable was nothing more than collateralized borrowing and that it did not constitute "sales" for the purpose of apportioning business income under Idaho Code § 63–3027(i). Union Pacific Corporation then moved for reconsideration, pointing out answers by the Tax Commission to three requests for admission in which the Tax Commission admitted: (1) "that Plaintiff's proceeds from its sales of accounts receivable were business income;" (2) "that Plaintiff sold its accounts receivable in transactions that qualify as a 'sale' pursuant to

I.C. § 63–3027(a)(5);" and (3) "that Plaintiff's sales of its accounts receivable were not loans against a receivable accounts [sic]." Based upon the Tax Commission's answers to these requests for admissions, the district court granted summary judgment to Union Pacific.

With the Tax Commission's answers to the requests for admission, the district court did not err in holding that the proceeds from the sale of the receivables were "sales" pursuant to Idaho Code § 63–3027(a)(5) and were therefore properly includable in the sales factor when apportioning Union Pacific's business income to Idaho. A request for admission can include the application of law to fact, and, unless the trial court permits the answer to be withdrawn or amended, the matter admitted is conclusively established for the purposes of the pending litigation. I.R.C.P. 36(a) & (b).

The Tax Commission argues that even with its answers to the requests for admission, the monies received from the sale of the accounts receivable should not have been considered because such sales were not an income producing activity. Idaho Code § 63–3027(i) provides, "All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three (3)." It is "business income" that is apportioned. The Tax Commission admitted that Union Pacific's "proceeds from its sales of accounts receivable were business income." To apportion business income, you must calculate the "sales factor," which is defined as "a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." I.C. § 63–3027(o). The words "sales" in the statutory definition of the sales factor obviously mean "sales" as defined by Idaho Code § 63–3027(a)(5). The Tax Commission admitted that Union Pacific "sold its accounts receivable in transactions that qualify as a 'sale' pursuant to I.C. § 63–3027(a)(5)." With the admissions made by the Tax Commission, there is simply no basis

for not including the proceeds from the sales of the accounts receivable in the sales factor when apportioning income pursuant to Idaho Code § 63–3027(i). That is not the end of the analysis, however.

■ Idaho Code § 63–3027(r) provides that the Tax Commission can deviate from the apportionment provisions of § 63–3027 if those provisions do not fairly represent the extent of the taxpayer's business activity in this State.[2] In this case, the Tax Commission found that "inclusion of the proceeds of the taxpayer's sales of receivables in the combined sales factor results, along with the other factors, in an apportionment that does not fairly represent how the taxpayer earns its income." When granting summary judgment, however, the district court did not address this issue.

The annual amounts of receivables sold by the railroads were approximately $2.5 billion in 1991, $2 billion in 1992, and $1.9 billion in 1993. By including accounts receivable from freight sales under the accrual accounting method and by also including the sales of those same accounts receivable under the cash accounting method, Union Pacific has in essence double-counted the same income, adding approximately $2 billion per year to the denominator of the sales factor. Doing so artificially increases the denominator of the sales factor, thereby reducing the income apportioned to Idaho. Union Pacific's business generates gross receipts in the range of $8–9 billion per year. When another $2 billion is added to the denominator of the sales factor, the apportionment provisions of Idaho Code § 63–3027 would not fairly represent the extent of the taxpayer's business activity in this state.

The Tax Commission argued before the district court that an alternative apportionment should be employed, and it suggested alternatives. In granting summary judgment, however, the district court did not address this issue. Therefore, we must vacate the grant of summary judgment on this issue and remand this case for the district court to consider an alternative apportionment formula.[3]

B. **Were dividends received by Union Pacific from a limited partnership mining operation "business income"?**

■ The Tax Commission contends that dividends received by Union Pacific from a limited mining partnership were "business income" that should have been apportioned under Idaho Code § 63–3027(a). In the 1860's, Congress granted land to the Union Pacific Railroad Company and to the Southern Pacific Railroad Company in order to develop the first transcontinental railroad. The land grant included not only the railroad right-of-way, but also twenty alternate sections of land per mile on both sides of the right-of-way. The portion of the transcontinental railroad constructed by the Union Pacific Railroad included the route across southern Wyoming, which passed over what is now known to be the largest deposit in the world of trona, a natural soda ash. As a result, the land granted to the Union Pacific Railroad in Wyoming included large trona deposits. Ownership of the trona deposits was later transferred to Union Pacific Miner-

2. Idaho Code § 63–3027(r) provides as follows:
    If the allocation and apportionment provisions of this section do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the state tax commission may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
    (1) Separate accounting, provided that only that portion of general expenses clearly identifiable with Idaho business operations shall be allowed as a deduction;
    (2) The exclusion of any one or more of the factors;
    (3) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

    (4) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

3. Our decision is based upon the Tax Commission's answers to the requests for admission, as is our direction on remand that the district court must consider an alternative apportionment formula. That direction is not intended to limit the district court's consideration in the event that the Tax Commission moves to amend or withdraw its answers to the requests for admission and the district court grants such motion. We likewise express no opinion upon whether the district court should grant such a motion if it is made.

als, Inc., a subsidiary of Union Pacific Corporation. Because the distinction between Union Pacific Corporation and Union Pacific Minerals, Inc., will not change the analysis of the issue presented, we will refer to the party involved as being Union Pacific.

Trona occurs at depths ranging from 200 to 800 feet underground, and mining it requires very large machines to grind the ore along the sides of a vertical shaft. The ore must then be brought to the surface where it is refined into soda ash, which is used in the chemical industry and in making glass, detergents, and paper. Union Pacific initially leased its trona reserves to others in exchange for royalties. In the late 1950's, Union Pacific decided to become directly involved in mining trona. In 1961 it joined with another entity to form a corporation named Rhone Poulenc Company of Wyoming (RPCW) in order to mine and refine trona into soda ash on land in Wyoming. RPCW mined trona both on land owned by Union Pacific and on land owned by the federal government. Union Pacific owned 49% of the RPCW, and RPCW paid royalties to Union Pacific for the trona mined from Union Pacific land.

RPCW generated profits, but did not pay dividends during the 1981–1991 time period. As a result, there was a dispute between Union Pacific and the majority shareholder as to how to extract cash from the corporation for its two shareholders. The majority shareholder preferred that RPCW lend cash to its shareholders, but such loans were made to it and not to Union Pacific. In 1991, the trona business was substantially restructured with RPCW becoming a limited partner in a business to mine trona and refine it into soda ash.

Union Pacific and the majority shareholder in RPCW resolved their differences about how to obtain cash from that corporation. In 1992 the corporation paid Union Pacific a dividend in the sum of $64,923,000. Union Pacific subtracted 5% of the dividend as an expense of earning the dividend and reported the balance of $61,676,850 as nonbusiness income allocable entirely outside of Idaho.

In 1993, the majority shareholder in RPCW exercised an option, which had been previously granted by Union Pacific, to increase its ownership in the corporation from 51% to 80%. Union Pacific surrendered the majority of its stock so that it only owned 20% of the common stock in RPCW. In return it received non-voting, non-redeemable preferred stock that bore cumulative dividends at a fixed rate of $202 per share. In 1993, RPCW paid Union Pacific a dividend of $5,418,450. Union Pacific again subtracted 5% as an expense of earning the dividend and reported the balance of $5,147,527 as nonbusiness income allocable entirely outside Idaho. The Tax Commission contends that both dividends constituted "business income," a portion of which should have been allocated to Idaho.

Business income is defined in Idaho Code § 63–3027(a)(1) as follows:

"Business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayer's trade or business operations. Gains or losses and dividend and interest income from stock and securities of any foreign or domestic corporation shall be presumed to be income from intangible property, the acquisition, management, or disposition of which constitute an integral part of the taxpayer's trade or business; such presumption may only be overcome by clear and convincing evidence to the contrary.

The district court held that the dividends that Union Pacific received from RPCW were not income generated in the regular course of Union Pacific's trade or business and that they were therefore not business income.

Idaho Code § 63–3027(a)(1) sets forth two separate and independent definitions of business income. The first definition for business income is "income arising from transactions and activity in the regular course of the taxpayer's trade or business." The second definition is "income from the acquisition,

management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayer's trade or business operations." The district court held that the dividends were not business income because they were not generated in the regular course of Union Pacific's trade or business. In doing so, the district court combined both definitions into one. There is no requirement under the second definition that the income arise from transactions and activity in the regular course of the taxpayer's trade or business.

The Tax Commission conceded in the district court that the dividends received from RPCW were not income arising from transactions and activity in the regular course of Union Pacific's trade or business. Therefore, the district court did not err in finding that the dividends were not generated in the regular course of Union Pacific's trade or business. The district court did not address, however, whether the dividends were "income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayer's trade or business operations." Therefore, we must vacate the grant of summary judgment on this issue and remand the case for the district court to consider this issue.

### III.

### CONCLUSION

We hold that including in the apportionment formula set forth in Idaho Code § 63–3027(i) both accounts receivable owing from freight sales and money received from the sale of those accounts receivable results in an apportionment that does not fairly represent how Union Pacific earns its income. Therefore, the district court must consider an alternative apportionment formula. We also hold that Idaho Code § 63–3027(a)(1) sets forth two separate definitions for "business income." When considering whether or not stock dividends received by Union Pacific constitute business income, the district court must consider whether such dividends are

"income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayer's trade or business operations." Because when it granted summary judgment the district court did not consider either of the above, we vacate the judgment and order granting summary judgment and remand this case for further proceedings consistent with this opinion.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.