134 P.3d 641

**LOCKHEED MARTIN CORPORATION,**
Petitioner–Respondent,

v.

**IDAHO STATE TAX COMMISSION,**
Respondent–Appellant.

No. 32022.

Supreme Court of Idaho,
Boise, March 2006 Term.

April 21, 2006.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Lawrence G. Allen, Deputy Attorney General, argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent. Richard G. Smith argued.

EISMANN, Justice.

This appeal asks us to decide whether the district court correctly held that the taxpayer's contract to clean up nuclear and hazardous waste buried in a pit at the Idaho National Engineering Laboratory was not a construction contract. Because the taxpayer is a unitary corporation transacting business within and without the state of Idaho, a portion of its total business income is apportioned to Idaho. The taxpayer spent

substantial sums of money in constructing facilities and equipment in an unsuccessful attempt to perform the clean up. The Tax Commission held that the contract was a long-term construction contract and that the value of the taxpayer's construction costs should be considered when apportioning its income to Idaho. The taxpayer sought review in the district court, which held that the contract was not a construction contract. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the computation of Idaho taxable income for Lockheed Martin Corporation (Lockheed), which is the parent company of a worldwide, advanced-technology conglomerate with many subsidiaries and affiliated companies. One of those subsidiaries entered into a contract with the United States Department of Energy (DOE) to perform work at the Idaho National Engineering Laboratory (INEL),[1] and that subsidiary subcontracted with another Lockheed subsidiary to perform the work. Because Lockheed and these subsidiaries are treated as a unitary business for the purposes of computing Idaho taxable income, we will refer to Lockheed as being the entity that contracted with DOE and was performing the work under that contract. For simplicity, we will also treat the contract with DOE and the subcontract between Lockheed's subsidiaries as being one contract, which we call the DOE contract.

The DOE contract required Lockheed to clean up radioactive and hazardous waste buried from 1967 through 1969 in Pit 9 at the INEL. Pit 9 is about 17.5 feet deep and approximately the size of a football field. Because it was not known whether the waste could be remediated using existing technology, the DOE contract was divided into three phases. In Phase I, potential contractors could demonstrate whether their proposed remediation processes could remove the radioactive waste from the soil. When a contractor was selected, Phase II would require the contractor to design and construct retrieval and treatment facilities and to demonstrate the effectiveness of its remediation process on a small portion of Pit 9. If the contractor successfully completed Phase II, then under Phase III it would be permitted to remediate all of the hazardous and nuclear waste in Pit 9. During Phase II, the contractor would receive advance payments as the project progressed, but the right to retain those payments was contingent upon the successful completion of Phase II.

Lockheed successfully completed Phase I and began its performance under Phase II of the contract. Its proposal involved constructing a large building (treatment building) that would move on rails over the pit. It would then use remotely controlled robots to assay, excavate, and retrieve the radioactive waste and soil. Any materials and soil with radioactivity levels greater than 10 nanocuries per gram would be moved into the treatment building for processing to remove radioactive substances and other hazardous materials. Those substances and materials would then be sent to a plasma arc melter contained in the treatment building, which would reduce them to a glass-like inert material which would be sent for long-term storage.

Lockheed began constructing the treatment building and offsite administrative and support facilities. By October 1997, the treatment building was about 77% complete and the offsite facilities were about 82% complete. Lockheed had also built a portion of the systems that would be used to extract and treat the radioactive substances and other hazardous materials. Lockheed did not successfully complete Phase II, however, because it could not obtain DOE approval regarding the safety of the project. The DOE terminated the contract on June 1, 1998. Lockheed had received approximately $56 million in advance payments of the approximately $179 million fixed fee it could earn under the contract, and it had spent approximately $302 million in attempting to perform the contract. It was ultimately required to refund the advance payments to the DOE.

1. The INEL was later named the Idaho National Engineering and Environmental Laboratory (INEEL), and is now named the Idaho National Laboratory (INL).

In April 2001, the Tax Commission conducted an audit of Lockheed for the tax years 1996 through 1998. One of Lockheed's Idaho subsidiaries had filed Idaho income tax returns listing much of the costs associated with the DOE contract as inventory. The audit staff did not challenge that listing, but did determine that Lockheed and its subsidiaries constituted a unitary business, resulting in more of Lockheed's income being apportioned to Idaho under Idaho Code § 63–3027. That statute provides a formula for computing Idaho taxable income for a corporation transacting business both within and without this state. The determination that Lockheed and its subsidiaries should be considered a unitary business required that all of their incomes be considered in the apportionment. The audit staff issued a notice of deficiency asserting that Lockheed owed additional Idaho income taxes and interest totaling $1,201,640.

Lockheed appealed to the Tax Commission. It did not challenge the unitary-business determination. Rather, it contended that the property relating to the DOE contract that it listed as inventory on its 1996 through 1998 Idaho income tax returns should be reclassified as construction in progress. The Tax Commission agreed. It held, however, that Lockheed was a construction contractor with respect to the DOE contract, and that therefore construction in progress under the DOE contract should be included in the property factor computation to the extent that such costs exceeded the advance payments. It modified the income tax deficiency, penalty, and interest to be $1,154,814.

Lockheed sought review of that decision by filing a complaint in the district court pursuant to Idaho Code § 63–3049(a). Both parties moved for summary judgment, and the district court entered judgment in favor of Lockheed. It held that the DOE contract was not a construction contract and that Lockheed was not a construction contractor. The Tax Commission then appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in holding that the DOE contract was not a construction contract?

2. Is Lockheed entitled to an award of attorney fees on appeal?

## III. ANALYSIS

Lockheed filed this action in the district court pursuant to Idaho Code § 63–3049(a). That statute provides that upon service of the Tax Commission, "the case shall proceed as other civil cases." "Consequently, we will review this case as an ordinary civil action, and will utilize the administrative determination as merely an articulation of the position of a party to this civil action." *Pratt v. State Tax Comm'n*, 128 Idaho 883, 884, 920 P.2d 400, 401 (1996).

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.* If the matter will be tried to the court rather than the jury, the judge is free to determine what reasonable inferences should be drawn from the undisputed facts. *Union Pac. Corp. v. Idaho State Tax Comm'n*, 139 Idaho 572, 83 P.3d 116 (2004). Since this case was to be tried by the court rather than a jury, the district judge was free to draw reasonable inferences from the undisputed facts.

### A. Did the District Court Err in Holding that the DOE Contract Was Not a Construction Contract?

Idaho Code § 63–3027 provides a formula for computing Idaho taxable income for a

corporation transacting business both within and without this state. *Union Pac. Corp. v. Idaho State Tax Comm'n*, 136 Idaho 34, 28 P.3d 375 (2001). If two or more corporations are found to be a unitary business, they are treated as if they are a single corporation. I.C. § 63–3027(t). The corporation's Idaho taxable income is computed by multiplying all of its business income by a fraction. The numerator of the fraction is the property factor plus the payroll factor plus two times the sales factor, and the denominator is four. I.C. 63–3027(i). The property factor is calculated by dividing the average value of Lockheed's real and tangible personal property owned or rented and used in Idaho during the tax period by the value of all of Lockheed's real and tangible personal property owned or rented and used during the tax period. I.C. § 63–3027(k). The payroll factor is calculated by dividing the total compensation paid by Lockheed in this state during the tax year by the total compensation it paid everywhere during the tax year. I.C. § 63–3027(n). The sales factor is Lockheed's total sales in Idaho during the tax period divided by its total sales everywhere during the tax period. I.C. § 63–3027(p).

"Property shall be included in the property factor if it is used, is available for use, or capable of being used during the taxable year in the regular course of the taxpayer's trade or business." IDAPA 35.01.01.465.01.a. "Property or equipment under construction during the taxable year ... shall be excluded from the factor until the property is used in the regular course of the taxpayer's trade or business." IDAPA 35.01.01.465.01.b. It is undisputed that the property being constructed by Lockheed under the DOE contract was under construction and would ordinarily be excluded from the property factor. There is a special regulation, however, for construction contractors.

"The apportionment of income derived by a long-term construction contractor shall be computed in accordance with MTC [Multistate Tax Commission] Regulation IV.18(d). as adopted July 10, 1980." IDAPA 35.01.01.580.01.a. The DOE contract was a long-term contract because it covered a period in excess of one year. The issue is whether it was a construction contract.

■ The district court held that it was not. The court determined that the evidence was undisputed that the primary goal of the DOE contract was to clean up the radioactive and hazardous waste buried in Pit 9 and that the construction done by Lockheed was only incidental to the primary purpose of the contract. It also found significant the fact that Lockheed was not constructing the facilities and equipment to sell to another, but only to use them itself in performing the remediation work. Once the remediation was completed, the DOE contract required that Lockheed remove the facilities and equipment from the INEL.

Regulation IV.18(d) does not define a construction contract. The Tax Commission argues that we should adopt the definition contained in 26 U.S.C. § 460(e)(4), which states, "For purposes of this subsection, the term 'construction contract' means any contract for the building, construction, reconstruction, or rehabilitation of, or the installation of any integral component to, or improvements of, real property." Using this definition, the district court did not err in holding that the DOE contract was not a construction contract.

The purpose of the DOE contract was to clean up the radioactive and hazardous wastes in Pit 9. The DOE sought proposals to remove that waste; it did not solicit bids to construct facilities at the site. The equipment and facilities being constructed by Lockheed were to be used by it to accomplish that remediation. Upon completion of the remediation, Lockheed was required to remove them. They were not intended to be improvements to the real property. For example, a contract to clean the exterior of a building is not transformed into a construction contract simply because it is necessary to construct temporary scaffolding in order to perform the cleaning required by the contract. The DOE contract was not a contract *"for"* the building, construction, reconstruction, or rehabilitation of, or the installation of any integral component to, or improvements of, real property." The most that can be said is that performance of the contract involved

constructing facilities and equipment that would remain the property of Lockheed and that it would be required to remove.

The Tax Commission argues that the DOE may not have required Lockheed to remove the equipment and facilities it was constructing. It relies upon the words "as necessary" in the following provision of the contract:

The Subcontractor will decontaminate and decommission, as necessary, all Subcontractor equipment/facilities upon completion of the work and shall remove such equipment/facilities from the Idaho National Engineering Laboratory in accordance with the requirements of this subcontract. In the event that the Subcontractor fails to comply with Phase II requirements, the cost associated with decontamination, decommissioning, and removal of the equipment/facilities shall be at the expense of the Subcontractor.

The words "as necessary" only refer to the decontamination and decommissioning; they do not refer to the removal of the equipment and facilities. If the contract was terminated early, decontamination and decommissioning may not be necessary, nor may it be necessary for all equipment and facilities constructed. There is nothing in the record indicating that Lockheed would not have been required to remove the equipment and facilities upon completion of the work. In fact, the contract defines the Phase III work as including "the actual remediation of the entire Pit 9 contents ..., decontamination and decommissioning of the entire facility, and removal of the entire facility from the INEL."

The Tax Commission also argues that if Lockheed had successfully completed the contract, there is evidence in the record that the equipment and facilities it constructed would have been used to remove and process radioactive and hazardous waste from sites other than Pit 9. The DOE contract provided that after the remediation of Pit 9, Lockheed would perform additional work by remediating other waste stored at the INEL if the United States Government appropriated the necessary funding for such additional work and if Lockheed complies with applicable federal, state, and local laws and regulations.

Thus, had Lockheed successfully completed Phase II and Phase III, and had the government appropriated funding, and had Lockheed complied with all of the applicable laws and regulations, then it may have been able to use the facilities for a longer period of time in order to clean up soil in other parts of the INEL. The fact that Lockheed spent about $302 million in partial completion of a contract for which it could only receive about $179 million in compensation certainly indicates that it hoped it could successfully remediate the nuclear and hazardous wastes in Pit 9 and be permitted to perform the additional work. It may also have hoped to perform remediation of nuclear wastes from other sites. Assuming that Lockheed hoped to use the equipment and facilities it was constructing under this contract to perform other remediation work does not change the analysis. Once Lockheed began using the equipment and facilities in the ordinary course of its business to remediate the radioactive and hazardous waste, their value would be included in the property factor. That is no different from other property or equipment under construction that is excluded from the property factor until it is used in the regular course of the taxpayer's trade or business under IDAPA 35.01.01.465.01.b.

The Tax Commission also argues that Notice 89–15, 1989 WL 587506 issued by the Internal Revenue Service shows that the DOE contract is a long-term construction contract. The Commission asserts, "As stated in the Notice, a long-term contract is a long-term construction contract if the construction activity required by the contract is necessary for the taxpayer to fulfill its long-term contract obligations." The portion of the Notice upon which the Tax Commission relies states as follows:

Q–4: Is a contract considered to be for the "manufacture, building, installation, or construction of property," even though the contract provides that the contractor is to retain title to, control over, and risk of loss with respect to the property until it is completed and accepted by the customer, and even though the parties characterize the contract as a contract for the sale of property?

A–4: Such a contract is considered to be for the "manufacture, building, installation, or construction of property," if the manufacture, building, installation, or construction of the subject matter of the contract is necessary in order for the taxpayer's contractual obligations to be fulfilled, and if the manufacture, building, installation or construction has not been completed at the time that the contract is entered into. It is not relevant whether the customer has title to[,] control over, or risk of loss with respect to the property. Moreover, it is not relevant whether the parties characterize their agreement as a contract for the sale of property.

The Tax Commission simply takes a portion of the above-quoted answer out of context in an attempt to support its position. The contract to which the answer applied was one to construct an improvement to real property and then transfer title of the improved property to the customer once the improvement was completed and accepted by the customer. That contract is entirely different from the DOE contract in this case. Lockheed did not contract to construct any improvements to real property and then transfer them to the DOE.

On October 9, 2001, the Internal Revenue Service issued a Field Service Advisory stating that a contract to remediate contaminated soil that involved designing, manufacturing, and installing a facility to perform the remediation and removing the facility upon completion was not a construction contract. The Advisory stated that it was not a construction contract because "the regulation requires an improvement to real property and defines an improvement as a structure intended to be permanently affixed to real property. The facility is not intended to be permanent, rather it is a machine that is disassembled when the soil remediation is completed." The Tax Commission seeks to distinguish the Advisory from this case by stating, "[T]he Pit 9 Contract was intended for the manufacture, building, installation, or construction of real property." The problem with this assertion is that it is not supported by the record. The district court did not err in holding that the DOE contract was not a construction contract and that Lockheed was therefore not a construction contractor.

■ Finally, the Tax Commission contends that we should apply Section 460 of the federal Internal Revenue Code (26 U.S.C. § 460) to Lockheed. It argues that even if the DOE was not a construction contract, we should require Lockheed to use the percentage-of-completion method as required by 26 U.S.C. § 460. According to the Commission, Idaho Code § 63–3002 requires that we apply Section 460.

Idaho Code § 63–3002 provides:

It is the intent of the legislature by the adoption of this act, insofar as possible to make the provisions of the Idaho act identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income, to the end that the taxable income reported each taxable year by a taxpayer to the internal revenue service shall be the identical sum reported to this state, subject only to modifications contained in the Idaho law; to achieve this result by the application of the various provisions of the Federal Internal Revenue Code relating to the definition of income, exceptions therefrom, deductions (personal and otherwise), accounting methods, taxation of trusts, estates, partnerships and corporations, basis and other pertinent provisions to gross income as defined therein, resulting in an amount called "taxable income" in the Internal Revenue Code, and then to impose the provisions of this act thereon to derive a sum called "Idaho taxable income"; to impose a tax on residents of this state measured by Idaho taxable income wherever derived and on the Idaho taxable income of nonresidents which is the result of activity within or derived from sources within this state. All of the foregoing is subject to modifications in Idaho law including, without limitation, modifications applicable to unitary groups of corporations, which include corporations incorporated outside the United States.

This statute does not incorporate by reference all provisions of the federal Internal Revenue Code into Idaho tax law. Section 460 applies to all long-term contracts, wheth-

er or not they are construction contracts, although it does exclude from its provisions certain long-term construction contracts. Prior to its adoption, federal taxpayers receiving payments under a long-term contract could report their income under either the percentage-of-completion method or under the completed-contract method. Under the percentage-of-completion method, income was recognized according to the percentage of the contract completed during each taxable year. Under the completed-contract method, the taxpayer reported the entire gross income and all costs in the tax year in which the contract was finally completed. Section 460 eliminated the completed-contract method of reporting income for purposes of federal income taxation.

Idaho Code § 63–3002 expressly states, "All of the foregoing is subject to modifications in Idaho law including, without limitation, modifications applicable to unitary groups of corporations, which include corporations incorporated outside the United States." This case involves the law applicable to unitary groups of corporations. Because Regulation IV.18(d) does not apply, the apportionment of Lockheed's business income to Idaho must be pursuant to Idaho Code § 63–3027. When using the formula provided in that statute, property is excluded from the property factor if it is under construction during the taxable year and is not being used in the regular course of the taxpayer's trade or business. IDAPA 35.01.01.465.01.b. Therefore, equipment and facilities being constructed by Lockheed at the INEL are not to be included in the property factor when applying the formula in Idaho Code § 63–3027.

### B. Is Lockheed Entitled to an Award of Attorney Fees on Appeal?

■ Lockheed seeks an award of attorney fees on appeal pursuant to Idaho Code § 12–117. Lockheed would be entitled to an award of attorney fees under that statute if we find that the Tax Commission acted without a reasonable basis in law or fact. *BHA Invs., Inc. v. City of Boise,* 141 Idaho 168, 108 P.3d 315 (2004). It also seeks an award of attorney fees under Idaho Code § 12–121. Under that statute, attorney fees will be awarded to the prevailing party when this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably or without foundation. *Hartman v. United Heritage Property and Cas. Co.,* 141 Idaho 193, 108 P.3d 340 (2005). We do not find that the Tax Commission's appeal was so lacking in merit that Lockheed is entitled to an award of attorney fees under either statute.

### IV. CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal, not including attorney fees, to the respondent.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

