# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33943

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF JAMES EVERETT MONTGOMERY, JR., DECEASED. | ) ) ) | |
| ------------------------------------------------------ | ) | |
| NANCY MONTGOMERY, | ) ) | Boise, December 2008 Term |
| Plaintiff-Appellant-Cross Respondent, | ) ) | 2009 Opinion No. 29 |
| v. | ) ) | Filed: March 4, 2009 |
| MANS MONTGOMERY, | ) ) | Stephen Kenyon, Clerk |
| Defendant-Respondent, | ) ) | |
| and | ) ) | |
| MARY L. SIMMONS, personal representative of the estate of JAMES EVERETT MONTGOMERY, | ) ) ) ) | |
| Defendant-Respondent-Cross Appellant. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Boise County. Honorable Kathryn A. Sticklen, District Judge. Honorable Arnold M. Cherin, Magistrate Judge.

The decision of the district court is <u>affirmed</u> in part, <u>reversed</u> in part, and <u>remanded</u> for further proceedings.

Marcus, Christian & Hardee, Boise, for appellant. Craig Marcus argued.

Ringert Clark Chartered, Boise, for respondent Mans Montgomery. James Kaufman appeared.

Stoppello & Kiser, Boise, for respondent Mary L. Simmons. Frank Stoppello argued.

---

HORTON, Justice

This case concerns the probate of the will of Jim Montgomery (Jim). Appellant Nancy Montgomery (Nancy) appeals the district court's affirmance of the magistrate judge's grant of

partial summary judgment, in which the magistrate judge concluded that Nancy was not an omitted spouse under I.C. § 15-2-301. Nancy also appeals the district court's affirmance of the magistrate judge's dismissal of her consolidated creditor's claim suit for untimely service of process. Finally, Nancy asks this Court to review the district court's failure to address the magistrate judge's order indefinitely deferring resolution of Nancy's claim for family allowance. Respondent/Cross-Appellant Mary Simmons (Mary), the personal representative of Jim's estate, appeals the district court's reversal of the magistrate judge's grant of partial summary judgment in which the magistrate judge concluded that Nancy and Jim were not engaged in a partnership that co-owned the Alibi Bar and its related assets.

We affirm the district court's decision vacating the magistrate judge's grant of summary judgment on the partnership issue and affirming the dismissal of the creditor's claim suit. We reverse the district court's decision affirming the magistrate judge's grant of partial summary judgment on the omitted spouse issue. We further instruct the district court to direct the magistrate judge to determine Nancy's entitlement, if any, to a family allowance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jim was married and the father of two children, Mans Montgomery (Mans) and Dannell Montgomery, when he met Nancy in late 1986. Jim had previously worked in the food service industry, but not in the business of selling alcohol by the drink. Nancy, however, had considerable experience in the bar business. After meeting Nancy, Jim leased the Alibi Bar (Alibi) in Boise, Idaho beginning in January 1987. Nancy assisted in setting up the business, and at about the same time, Jim and Nancy began to live together. Jim subsequently purchased the Alibi, including real and personal property, in late 1987. Jim was divorced in November 1987.

Jim purchased a liquor license in March of 1991. The real property and the liquor license were titled in Jim's name, although there is evidence that Nancy contributed $2,500 toward the purchase of the license.

After owning the Alibi for several years, Jim formed a corporation and a limited liability company (LLC) for the purpose of limiting personal liability and shielding the bar's assets. The parties dispute whether these entities were ever viable, but it is undisputed that none of the Alibi assets were ever transferred to these entities prior to Jim's death.

On July 5, 1990, Jim executed a will in which he bequeathed a house located at 2358 Wyoming Street, Boise, Idaho to Nancy, and left his remaining property to his sons in equal

2

shares. Jim and Nancy were married on October 17, 1991, and remained married until Jim's death on December 2, 2003. During the marriage, Jim sold the Wyoming Street house. Also during their marriage, Jim and Nancy acquired certain community property by way of joint tenancies with rights of survivorship, including a condominium in Arizona, and bank, brokerage, and retirement accounts, all of which passed directly to Nancy upon Jim's death. Jim's will, which was never changed, was admitted to probate and Mary (Jim's sister) was appointed personal representative.

Nancy filed a petition in the probate proceedings seeking an intestate share of Jim's estate as an omitted spouse. Mary filed a motion to have an inventory confirmed by the court that designated the Alibi and related assets as Jim's separate property. In response, Nancy asserted that she and Jim were partners in the Alibi business.

Nancy filed a separate suit in district court as a creditor of the estate, claiming the estate has been unjustly enriched by her contributions to the Alibi. The creditor's suit was consolidated with the probate proceedings before the magistrate judge by agreement of the parties and the case was scheduled for a jury trial. After considerable discovery, Nancy, Mary, and Mans filed cross-motions for summary judgment on the omitted spouse and partnership claims. Mary also moved to dismiss the creditor's suit. During this time, Nancy repeatedly sought an order requiring Mary to pay Nancy a family allowance during the pendency of the probate proceedings.

Both sides raised various evidentiary objections to materials submitted in connection with the cross-motions for summary judgment. At the September 28, 2005 hearing on the parties' motions, the magistrate judge expressly decided not to decide the admissibility of evidence, stating that all evidence would be considered and given "whatever weight" the magistrate judge determined to be appropriate. The magistrate judge then granted summary judgment against Nancy on the omitted spouse and partnership claims and dismissed the creditor's suit for untimely service of process. Finally, the magistrate judge denied Nancy's motion to set a deadline for Mary to complete the accounting necessary to calculate Nancy's family allowance.

Nancy appealed to the district court, which upheld the magistrate judge's decision on the omitted spouse issue, reversed the grant of summary judgment and remanded on the partnership issue, and affirmed the dismissal of the creditor's suit. The district court did not address the

3

issue of Nancy's claim for family allowance. Nancy timely appealed to this Court and Mary timely cross-appealed.

## II. STANDARD OF REVIEW

When this Court reviews a decision rendered by a district court acting in its appellate capacity, it considers the trial court's decision, and if that decision is free from error and if the district court affirmed that decision, we affirm the district court's decision as a matter of procedure. *Losser v. Bradstreet,* 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

When this Court reviews a trial court's decision on summary judgment, it employs the same standard as that properly employed by the trial court when originally ruling on the motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997) (citing *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994)). We construe disputed facts and draw all reasonable inferences in favor of the non-moving party. *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

The fact that both sides moved for summary judgment does not in itself establish that there is no genuine issue of material fact. *Casey v. Highlands Ins. Co.*, 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979); *Farmer's Ins. Co. of Idaho v. Brown*, 97 Idaho 380, 381-82, 544 P.2d 1150, 1151-52 (1976). Our rules do not contemplate the transformation of the court, sitting to hear a summary judgment motion, into the trier of fact when the parties file cross-motions for summary judgment. *Moss v. Mid-America Fire and Marine Ins. Co*., 103 Idaho 298, 302, 647 P.2d 754, 758 (1982) (citing I.R.C.P. 56(c)). This Court applies an abuse of discretion standard when determining whether testimony offered in connection with a motion for summary judgment is admissible. *McDaniel v. Inland Northwest Renal Care Group-Idaho, LLC*, 144 Idaho 219, 221, 159 P.3d 856, 858 (2007). This Court exercises free review over matters of law. *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002).

## III. ANALYSIS

Before we consider the parties' cross-motions for summary judgment on the partnership and omitted spouse issues specifically, we must first review how the trial court handled the evidence in this case. After addressing the summary judgment decisions, we then address

4

whether dismissal of the creditor's claim suit was proper. Finally, we examine Nancy's claim of entitlement to a statutory family allowance during probate proceedings.

**A. The magistrate judge erred when he granted summary judgment in favor of Mans and Mary because he did not determine the admissibility of evidence in the first instance.**

At the September 28, 2005 hearing before the magistrate judge, Nancy's attorney suggested that, pursuant to *Ryan v. Beisner*, 123 Idaho 42, 844 P.2d 24 (Ct. App. 1992), prior to ruling on the motions for summary judgment the court should entertain and resolve Nancy's objections to the admissibility of various evidence. Nancy informed the magistrate judge that her objections rested on grounds of hearsay, relevancy, non-responsive answers, and foundation. The magistrate judge expressed concern that it would take too much time for him to make preliminary rulings on the admissibility of each piece of evidence to which an objection had been made. Instead, while acknowledging that much of the evidence offered by the parties was inadmissible, the magistrate judge suggested the parties should simply begin to argue, and he would address evidentiary objections as they came up during the course of argument. Mans' attorney made his argument on the partnership issue, asserting that Nancy's testimony on the issue was barred by Idaho's "Deadman's Statute." At that point, the magistrate judge decided that the parties should not present any further argument regarding evidentiary objections:

> THE COURT: Mr. Marcus, let me make a preliminary ruling.
> I am going to allow all of the statements and things that are all hearsay of friends and relatives, and I will give them whatever weight to which I think they're entitled.
>
> . . .
>
> THE COURT: Frankly, a lot of that stuff is hearsay; and I probably should not admit it. You know, I've been doing this for 45 years, I guess, in this business; and I have been reversed lots of times.
> And the times I get reversed is when I keep evidence out. So my philosophy is let it in and weigh it, rather than keep it out and get – and come back and try the case again.

The role of an appellate court is to review a trial court's evidentiary rulings under the abuse of discretion standard. *Reed v. Reed*, 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002). The appellate court should consider whether the trial court correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason to determine whether a trial court has abused its discretion. *Id.*

5

For nearly two decades, the appellate courts of this state have consistently held that the trial courts must determine the admissibility of evidence as a "threshold question" to be answered before addressing the merits of motions for summary judgment. *Hecla Mining Co. v. Star-Morning Mining Co.*, 122 Idaho 778, 784, 839 P.2d 1192, 1198 (1992); *Ryan*, 123 Idaho at 45, 844 P.2d at 27. We recently reiterated this rule in *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 175 P.3d 172 (2007):

> When considering evidence presented in support of or opposition to a motion for summary judgment, a court can only consider material which would be admissible at trial. *Petricevich v. Salmon River Canal, Co.*, 92 Idaho 865, 869, 452 P.2d 362, 366 (1969); I.R.C.P. 56(e). Thus, if the admissibility of evidence presented in support of a motion for summary judgment is raised by objection by one of the parties, the court must first make a threshold determination as to the admissibility of the evidence "before proceeding to the ultimate issue, whether summary judgment is appropriate." *Bromley v. Garey*, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1999) (quoting *Ryan*, 123 Idaho at 45, 844 P.2d at 27).

145 Idaho at 14, 175 P.3d at 176. In this instance, the magistrate judge refused to apply governing legal standards, despite having been directed to controlling legal authority. Simply stated, he failed to do the work required of every trial judge confronted with objections to evidence offered in connection with a summary judgment motion. This was an abuse of discretion.

A trial court's failure to determine the admissibility of evidence offered in connection with a motion for summary judgment is error that may not be remedied on appeal. *Gem State,* 145 Idaho at 15-16, 175 P.3d at 177-78. This is because the admissibility of evidence is a matter committed to the discretion of the trial court. *Id.* at 15, 175 P.3d at 177 (citing *Athay v. Stacey,* 142 Idaho 360, 366, 128 P.3d 897, 903 (2005)). When the discretion exercised by a trial court is affected by an error of law, the role of the appellate court is to note the error made and remand the case for appropriate findings. *Id.* at 16, 175 P.3d at 178 (citing *Miller v. Haller,* 129 Idaho 345, 351, 924 P.2d 607, 613 (1996)).

The magistrate judge's error did not end with his refusal to rule on objections: he further determined that it was appropriate to weigh the evidence before him. This represents a violation of the well-established rule that a trial court, in ruling on a motion for summary judgment, is not to weigh evidence or resolve controverted factual issues. *Am. Land Title Co. v. Isaak*, 105 Idaho 600, 601, 671 P.2d 1063, 1064 (1983).

    1. <u>Nancy's Partnership Claim</u>

Idaho has codified the Uniform Partnership Act at title 53, chapter 3. Idaho Code § 53-3-202(a) defines a partnership as "the association of two (2) or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership." Idaho Code § 53-3-202(c) sets out the following rules for determining whether a partnership exists:

> (1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.
> (2) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.
> (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:
> (i) Of a debt by installments or otherwise;
> (ii) For services as an independent contractor or of wages or other compensation to an employee;
> (iii) Of rent;
> (iv) Of an annuity or other retirement or health benefit to a beneficiary, representative, or designee of a deceased or retired partner;
> (v) Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral; or
> (vi) For the sale of the goodwill of a business or other property by installments or otherwise.

The official comment to this subsection states in part: "Whether a relationship is more properly characterized as that of borrower and lender, employer and employee, or landlord and tenant is left to the trier of fact." UNIFORM PARTNERSHIP ACT § 202 cmt. (1994).

The magistrate judge, after noting again that he was weighing the evidence, granted summary judgment declaring that no partnership existed. The magistrate judge's weighing of the evidence was clearly error. There is no written partnership agreement in the record. However, Nancy presented the testimony of witnesses who claim that she and Jim were engaged in a partnership. Nancy also presented numerous documents showing that she was involved in operating the Alibi, including evidence that she contributed her own money towards the purchase of the liquor license. As it stands, there is evidence in the record tending to show the existence of a genuine issue of material fact regarding the existence of a partnership. However, until such time as the trial court rules on the admissibility of this evidence, this Court is unable to determine whether summary judgment on the partnership issue was appropriate. Thus, we affirm the district court's decision vacating the grant of summary judgment on the partnership issue. On

7

remand, the district court should instruct the trial court to rule on objections prior to determining whether summary judgment is appropriate as to Nancy's partnership claim.

Because the question of how I.R.E. 601(b) should be applied will arise on remand, we deem it appropriate to briefly address this evidentiary issue. I.R.E. 601(b) is virtually identical to I.C. § 9-202(3), the so-called "Deadman's Statute."[1] We have previously described the appropriate analysis to be applied:

> In *Argyle v. Slemaker*, 99 Idaho 544, 585 P.2d 954 (1978), we stated that "the statute bars (1) certain persons from testifying (2) in specified actions (3) as to certain communications. All three portions of I.C. § 9-202(3) must be satisfied in order for the evidence to be barred." *Id.* at 547, 585 P.2d at 957.

*Matter of Estate of Keeven*, 110 Idaho 452, 460, 716 P.2d 1224, 1232 (1986). Given the virtual identity of the rule and the statute, this analysis continues to be appropriate. We have not interpreted this provision so broadly as to bar testimony concerning a state of affairs or matters of fact occurring before a decedent's death. *Id.* When testimony of an alleged oral agreement is presented alone, it is inadmissible; however, "written evidence to substantiate the alleged agreement" is admissible. *Id.*

## 2. Nancy's Omitted Spouse Claim

Idaho Code § 15-2-301 is the specific statutory provision relating to omitted spouses and states in relevant part:

> (a) If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

The purpose of this provision is to avoid the unintentional disinheritance of the spouse of a testator who executes a will prior to the marriage but neglects to revise it afterwards. *Estate of Keeven*, 110 Idaho at 457, 716 P.2d at 1229. The provision reflects the view that the spouse's intestate share is what the decedent would have wanted the spouse to have if the decedent had thought about the relationship of his old will to the new situation. *Id.* at 458, 716 P.2d at 1230. In some cases, a will executed prior to marriage makes a devise to the testator's future spouse.

---

[1] I.C. § 9-202(3) has a comma after the phrase "estate of a deceased person," whereas that comma is omitted in I.R.E. 601(b).

Idaho has adopted the view that some such devises preclude the surviving spouse from qualifying as an omitted spouse under the statute even though the devise was not expressly made in contemplation of marriage. *Id.* However, sometimes such a devise can be so minimal and made in such a way that it appears that the testator failed to provide for the surviving spouse within the meaning of the statute. *Id*.

The surviving spouse bears the burden of proving that the devise does not reflect what the testator would have wanted. This determination requires consideration of the following factors: (1) the alternative takers under the will, (2) the dollar value of the testamentary gift to the surviving spouse, (3) the fraction of the estate represented by the gift, (4) whether comparable gifts were made to other persons, (5) the length of time between execution of the testamentary instrument and the marriage, (6) the duration of the marriage, (7) any *inter vivos* gifts the testator has made to the surviving spouse, and (8) the separate property and needs of the surviving spouse. *Id.* at 458-59, 716 P.2d 1230-31.

In this case, Jim's will devises to Nancy a house that his estate no longer owns and contains no indication that Jim considered Nancy as a future spouse at the time he made it. Thus, the will is ambiguous as to what Jim intended Nancy, as his surviving spouse, to inherit from his estate. When a court determines that a document is ambiguous, interpretation of the document presents a question of fact that focuses upon intent. *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 873-74, 993 P.2d 1197, 1204-05 (1999) (holding issue of settlor's intent, as a question of fact, could not be resolved on summary judgment).

The magistrate judge stated that in his view, Jim did not forget about Nancy as a spouse, intended her only to have the minimal devise under the will, and made transfers outside the will which, judging from their value, Jim intended to be in lieu of a devise under the will. In doing so, the magistrate judge made factual findings regarding Jim's intent after weighing all the evidence presented, whether admissible or not. This was error, as stated above, because the magistrate judge should have determined the admissibility of evidence as a threshold matter and after doing so, if a genuine issue of material fact existed regarding Jim's intent, the magistrate judge was not free to weigh the evidence in order to resolve the factual dispute by way of summary judgment.

We also deem it appropriate to provide guidance as to another evidentiary issue that will arise on remand. The district court determined that statements attributed to Jim submitted by all

parties on the omitted spouse issue were hearsay and would normally be inadmissible; however, the district court concluded that I.C. § 15-2-301(a), which provides that "the intent that the transfer be in lieu of a testamentary provision [may be] shown by statements of the testator" creates an exception to the hearsay rule. Accordingly, the district court concluded that the statements were properly admitted.

The appropriate analysis is found by reference to the Idaho Rules of Evidence. Idaho Rule of Evidence 1102 states: "Statutory provisions and rules governing the admissibility of evidence, to the extent they are evidentiary and to the extent that they are in conflict with the applicable rules of Idaho Rules of Evidence, are of no force or effect." *See also* Richard W. Effland, *Uniform Probate Code Practice Manual* 60-61 (Robert R. Wright ed., Association of Continuing Legal Education Administrators, 1972) (stating "Nothing in the [omitted spouse] statute, however, is intended to alter rules of evidence applicable to statements of a decedent."). Thus, we conclude that the omitted spouse statute does not create an exception to the hearsay rule. Rather, the exception is found in I.R.E. 803(3), which provides:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Several courts have interpreted similar rules to permit admission of hearsay evidence of a decedent's state of mind with respect to the execution, revocation, identification, or terms of his will. In *Honey v. Hickey*, 760 S.W.2d 81 (Ark. App. 1988), it was alleged that a decedent and her husband had orally contracted to execute and not revoke mutual wills providing that the surviving spouse would inherit certain property that would then be divided among the children in a certain manner. *Id.* at 81. The decedent violated this alleged agreement by giving the property to the daughters with a reservation of a life estate. *Id.* at 81-82. The court ruled that testimony by the husband's sister as to hearsay statements made by the husband and wife in her presence at the time the wills were executed concerned the intent and state of mind of the testators at the time the wills were executed and thus was not excluded under Arkansas Rule of Evidence 803(3). *Id.* at 83. In *Okken v. Okken Estate*, 348 N.W.2d 447 (N.D. 1984), a testatrix left her entire estate to her second son and gave nothing to her first son. *Id.* at 449. The court held evidence from the second son's wife that the testatrix had told her of her bad relations with the first son was admissible under Rule 803(3) as evidence of the testatrix's mental, emotional, or

physical condition at the time she made her will. *Id.* at 451. In *Knesek v. Witte*, 715 S.W.2d 192 (Tex. App. 1986), the court held that statements by a testatrix's late husband to a witness that he and the testatrix had made their wills and that all of the property was going to his nieces and nephews was admissible under Texas Rule of Evidence 803(3) to show the existence of an oral contract to make wills. *Id.* at 197. Similarly, evidence of statements made by Jim as to how he intended to distribute his property should be admitted if such statements relate to the execution, revocation, identification, or terms of his will.

For the foregoing reasons, we reverse the district court's decision affirming the magistrate judge's grant of summary judgment on the omitted spouse issue and affirm the district court's decision vacating the grant of summary judgment and remanding on the partnership issue. This matter will be remanded to the district court with instructions to vacate the magistrate judge's grant of summary judgment on both issues and to remand this case for proceedings before the magistrate judge consistent with this opinion.

**B. The dismissal of Nancy's creditor's claim must be affirmed.**

On November 8, 2004, Nancy filed a complaint against Mary and the estate alleging the estate was unjustly enriched by Nancy's contributions to the Alibi Bar. In January and February of 2005, the attorneys for the parties discussed the possibility of Mary's attorney accepting service of process on Mary's behalf. There is a dispute as to whether Mary's attorney finally agreed to do so. On June 1, 2005, Nancy's attorney filed a motion for an order determining that Mary had been served or, alternatively, enlarging the time for service to July 1, 2005, and the district court entered an *ex parte* order extending the service date. Mary was never served with the motion and only learned of the *ex parte* order by requesting a copy from the court clerk. Nancy's attorney finally served Mary with the complaint and summons on June 4, 2005, 6 months and 27 days after the complaint was filed.

Following a status conference, the parties stipulated that the creditor's suit would be consolidated with the probate proceedings before the magistrate judge. The district court entered an order consistent with the stipulation on July 21, 2005. Meanwhile, on June 23, 2005, Mary filed a motion to dismiss the creditor's suit pursuant to I.R.C.P. 4(a)(2), 12(b)(5), and 12(b)(8). On October 25, 2005, the magistrate judge signed an order dismissing the creditor's suit. The magistrate judge based his dismissal on I.R.C.P. 4(a)(2) (mandatory dismissal where no good

cause shown for untimely service), 12(b)(5) (insufficiency of service of process), and 12(b)(8) (another action pending between the same parties for the same cause).

Nancy did not raise any objection to the I.R.C.P. 12(b)(8) grounds for dismissal before the magistrate judge. Nancy also failed to address the 12(b)(8) grounds for dismissal in her district court briefs, and the district court did not discuss 12(b)(8). This Court will not address an issue not raised before the district court sitting in its appellate capacity. *Barmore v. Perrone,* 145 Idaho 340, 344, 179 P.3d 303, 307 (2008) (citing *Craven v. Doe,* 128 Idaho 490, 493, 915 P.2d 720, 723 (1996)). Therefore, we do not address Nancy's arguments regarding I.R.C.P. 4(a)(2) and 12(b)(5), as the magistrate judge's 12(b)(8) basis for dismissal stands unchallenged. We affirm the district court's decision affirming the magistrate judge's dismissal of the creditor's suit.

**C. The magistrate judge should determine and award to Nancy a reasonable family allowance.**

Nancy moved the magistrate court several times to grant her a family allowance pursuant to I.C. § 15-2-404. At the September 28, 2005 hearing before the magistrate judge, the attorney for the personal representative suggested that there was a possibility Nancy had already received what she was entitled to under this provision and that Mary was therefore in the process of having an accounting done to make that determination. The attorney told the court the accounting would be done in three to four weeks, and the magistrate judge replied:

> THE COURT: Could I get you to agree, when they get that accounting, that you have Judge Cockerille determine if there should be a family allowance, instead of ruling on it now?
> MR. STOPPELLO: Yes.

The resulting order stated that Mary believed Nancy had received proceeds in excess of the family allowance and was therefore having an accounting prepared to address the issue. Nancy filed an objection requesting the court set a January 1, 2006 deadline for the accounting to be completed. The court rejected the request. Nancy renewed her request for family allowance at the district court; however, the court made no mention of it. Mary has not completed the accounting and has not paid any family allowance to Nancy. Nancy has requested that this Court vacate the orders entered by the magistrate judge allowing Mary to defer making the accounting and instruct the court to finally determine and pay her family allowance.

The Idaho legislature repealed the family allowance provision, I.C. § 15-2-404, in the last legislative session. 2008 S.L. ch. 182, § 4, p. 550. However, new legislation is not given

12

retroactive effect unless "expressly so declared." I.C. § 73-101. The legislation repealing I.C. § 15-2-404 does not provide for retroactive effect. Accordingly, we address this claim.

The granting of a family allowance pursuant to I.C. § 15-2-404 is committed to the discretion of the trial court. *Matter of Bowman's Estate*, 101 Idaho 131, 136, 609 P.2d 663, 668 (1980) (holding no abuse of discretion by the trial court either in granting the family allowance or in the amount thereof). Abuse of that discretion is found when the reviewing court is convinced that the award was clearly arbitrary and manifestly unreasonable. *Id.*

By declining to set a deadline for the accounting to be completed, the magistrate judge effectively allowed Mary to withhold any allowance Nancy may have been entitled to throughout the course of these proceedings, effectively denying Nancy her statutory entitlement. The magistrate judge, rather than exercising his discretion in the matter, delegated the resolution of the issue. Although Mary's attorney represented that the accounting would be complete sometime around the end of October 2005, Mary has failed to complete the accounting even now—three years later. The magistrate judge's refusal to act was an abuse of discretion, and the district court should have so held. We now remand with instructions to the district court to direct the magistrate judge to determine and award to Nancy such family allowance as she is entitled to, if any.

## IV. CONCLUSION

We affirm the district court's decision vacating the grant of summary judgment against Nancy on the partnership issue. We reverse the district court's decision affirming the grant of summary judgment against Nancy on the omitted spouse issue. We remand with instructions that the trial court rule on objections prior to deciding the motions for summary judgment. We affirm the district court's decision affirming the dismissal of the creditor's claim. Finally, we instruct the trial court to determine what, if any, family allowance is due to Nancy. In view of the mixed result, no costs are awarded.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem KIDWELL, **CONCUR**.