# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46941

NOELL INDUSTRIES, INC., a Virginia
corporation,

    Plaintiff-Respondent,

v.

IDAHO STATE TAX COMMISSION,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

**Boise, January 2020 Term**

**Opinion filed: May 22, 2020**

**Karel A. Lehrman, Clerk**

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Steven Hippler, District Judge.

The judgment of the district court is <u>affirmed</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant.  Nathan H. Nielson argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for Respondent.  Richard G. Smith argued.

MOELLER, Justice.

This case concerns a straightforward issue of tax law: whether the gain from the sale of an ownership interest in a legal entity constituted "business income" under Idaho Code section 63-3027. In 2010, Noell Industries, Inc. sold its interest in a limited liability company for a net gain of $120 million. Noell Industries reported the income to Idaho, but paid all of the resulting tax on the gain to the Commonwealth of Virginia, its commercial domicile. Following an audit, the Idaho Tax Commission concluded the net gain was "business income" pursuant to Idaho Code section 63-3027(a)(1) and, thus, apportionable to Idaho. Noell Industries sought judicial review before the Ada County District Court pursuant to Idaho Code section 63-3049(a). The district court ruled that the Commission erred when it (1) determined that Noell Industries paid insufficient taxes in 2010 and (2) assessed additional tax and interest against it. The Commission appealed. We affirm.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Mike Noell incorporated Noell Industries, Inc., ("Noell Industries")[1] in Virginia to develop and sell combat and tactical gear. The company was inspired by Noell's service as a U.S. Navy SEAL. Following his military service, Noell started the corporation in his garage, designing and manufacturing a variety of gear for military, law enforcement, and recreational use. For about a decade, Noell Industries manufactured and sold tactical gear until 2003 when Noell transferred the net assets of Noell Industries to a new company of his creation, Blackhawk Industries Products Group Unlimited, LLC ("Blackhawk"), in exchange for a 78.54% membership interest. Blackhawk's remaining ownership units were conveyed to persons other than Noell Industries. Blackhawk is a Virginia limited liability company that operated across multiple states, including Idaho. Blackhawk also maintained its own human resource department. Noell served as Blackhawk's President and CEO and was part of a six-member management team. However, as a "high level executive" Noell did not manage Blackhawk's day-to-day operations, marketing decisions, and other ordinary business and sales decisions.

Blackhawk established a physical presence in Idaho in 2004 when it purchased and developed real property, commenced sales of its products, and hired employees in Idaho. Then, in 2007, Blackhawk leased a factory in Boise to serve as its "operation center" for the West Coast. The Boise factory was one of four U.S. factories that produced duty gear, body armor, holsters, and other outdoor and hunting products. By 2010, Blackhawk "operated in substantially all of the states" and held approximately $20 million worth of real and personal property in Idaho. In contrast, Noell Industries never owned any real property in Idaho.

Ultimately, Blackhawk became the company that manufactured and sold the combat and tactical gear while Noell Industries only held a majority interest in Blackhawk. After the 2003 reorganization, Noell Industries' activities "were limited to owning the 78.34% investment in Blackhawk [LLC]" and another business that leased real property to Blackhawk within Virginia. Almost all of Noell Industries' income came directly from Blackhawk. For example, in 2009, Blackhawk "generated $10,496,500 in income for Noell Industries." Noell Industries' remaining income for 2009 was $18,948 in accumulated interest. The company also reported a loss of $396,394 from the other entity in which Noell Industries held an interest. In its tax returns, Noell

---

[1] While Noell Industries was originally named Blackhawk Industries, Inc., it will be referred to as "Noell Industries" to reflect its 2010 name change and avoid confusion with a similarly named entity.

Industries' reported "investment" as its business activity, as well as its "product or service." Noell Industries did not have any employees between the 2003 reorganization and the 2010 sale. In addition, Noell Industries did not share any assets or expenses with Blackhawk, nor did it provide financing or other services to Blackhawk. However, Blackhawk and Noell Industries utilized the same professional firms for their respective legal and accounting services.

In 2010, Noell Industries sold its 78.54% interest in Blackhawk for a net gain of $120 million. Noell Industries reported the gain from the sale on its 2010 Idaho tax return, but it did not apportion any of the gain to Idaho and reported "nearly all of the gain to goodwill." Instead, Noell reported and paid the taxes on the gain on the sale to Virginia. Idaho's state auditors, however, concluded the gain was "business income" pursuant to Idaho Code section 63-3027, and the Idaho Tax Commission affirmed this decision. In its initial Notice of Deficiency Determination ("NODD"), the Commission calculated the total tax owed to be $4,481,875, but later reduced the total to $1,423,520 after removing the penalty assessments in its final decision of November 8, 2017.

Noell Industries contested the Commission's decision by filing a "complaint" for judicial review with the district court "pursuant to Rule 84(d)(5) of the Idaho Rules of Civil Procedure."[2] Both parties recognized that the primary issue presented on review was "whether Idaho has authority to tax the gain on Noell Industries' sale of its interest in Blackhawk LLC." The complaint framed the issues for which review were sought as "whether the Tax Commission erred in affirming the deficiency determinations and assessing additional tax and interest in the Decision, related to the gain on the sale of the Blackhawk interests," which is inconsistent with Idaho Code section 63-3027 and a violation of the Due Process and Commerce Clauses of the U.S. Constitution. Pursuant to section 63-3049(b) of the Idaho Code, and prior to filing its complaint, Noell Industries paid the requisite 20% deposit ($300,000) as a condition of appealing the Commission's decision. The Commission requested a de novo review pursuant to Idaho Code section 63-3049. After reviewing cross-motions for summary judgment, the district court found that the gain was not "business income" under section 63-3027 and, therefore, not subject to apportionment to Idaho. The Tax Commission timely appealed.

---

[2] To be clear, there is no "Rule 84(d)(5)" in the applicable version of the Idaho Rules of Civil Procedure. Likewise, the Court notes that Rule 84 does not allow for the filing of a "complaint"; rather, it requires that judicial review be commenced "only by the filing of a *petition* for judicial review." I.R.C.P.84(b)(1) (emphasis added). However, Idaho Code section 63-3049 directs an aggrieved taxpayer to file a "complaint" with the district court. While such inconsistency in terminology between court rules and statutes is not unique, it is noted to avoid confusion.

## II.  STANDARD OF REVIEW

Questions of law, including the interpretation of relevant statutes and constitutional provisions, receive de novo review by this Court. *Nye v. Katsilometes*, 165 Idaho 455, ___, 447 P.3d 903, 906 (2019). When such questions are considered in the context of a summary judgment order, we review the record *de novo,* applying the familiar standards set forth in I.R.C.P. 56:

> "[T]he standard of review for this Court is the same standard used by the district court in ruling on the motion. The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law. If the evidence reveals no genuine issue as to any material fact, then all that remains is a question of law over which this Court exercises free review."

*Lee v. Willow Creek Ranch Estates No. 2 Subdivision Homeowners' Ass'n, Inc.,* 164 Idaho 396, 399, 431 P.3d 4, 7 (2018).

## III.  ANALYSIS

### A.  The district court did not base its decision on an unpleaded issue.

The Commission first argues on appeal that the district court erred by deciding this case on an unpleaded issue, the unitary business test, which was first raised in Noell Industries' motion for summary judgment. It further argues that the unitary business issue is a "discrete" question and test arising from the "business income" question. Noell Industries contends that this argument is a "straw man" procedural technicality because the question at issue—one that was pleaded in the complaint—is whether the gain from selling Blackhawk is "business income." We agree with Noell Industries.

Idaho Code section 63-3049(a) permits a taxpayer to appeal the Tax Commission's decision by filing a complaint in district court. Under the Idaho Rules of Civil Procedure for pleadings, "[e]ach allegation must be simple, concise, and direct. No technical form is required." I.R.C.P. 8(d)(1). These rules comport with Idaho's notice-pleading requirement, which requires a pleading to put the adverse party "on notice of the claims brought against it." *Hodge for & on behalf of Welch v. Waggoner*, 164 Idaho 89, 96, 425 P.3d 1232, 1239 (2018) (citation omitted). Accordingly, notice pleading requires the complaint to provide "some indication" of the basis for

4

relief, but not always an exact statutory basis or formal cause of action. *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010)).

We conclude that Noell Industries sufficiently pleaded this issue below. The pertinent provisions of Noell Industries' complaint read as follows:

> 7. This case involves the question of whether Plaintiff is subject to tax, as a non-resident of Idaho, on gain from the sale of an intangible asset with a situs in Virginia. That asset is Plaintiff's ownership of interests in a Virginia limited liability company named [Blackhawk].

> 8. Pursuant to Rule 84(d)(5) of the Idaho Rules of Civil Procedure, Plaintiff states that the issues on appeal are whether the Tax Commission erred in affirming the deficiency determinations and assessing additional tax and interest in the Decision, related to the gain on the sale of the Blackhawk LLC interests, for reasons that include the following in paragraphs 9-12 of this Complaint.

> 9. The Tax Commission's assessment of tax on the gain on the sale of the Blackhawk LLC interests is inconsistent with Idaho law, in that it does not represent business income of Plaintiff subject to apportionment under Idaho Code § 63-3027. Instead, it represent [sic] an investment by Plaintiff, an intangible asset the gain from which should be allocated to Virginia, the state of Plaintiff's residence.

> 10. Plaintiff did in fact report the gain on the sale to the State of Virginia, and paid the tax on that sale to that state.

> 11. Alternatively, the Tax Commission's assessment of tax on the gain on the sale of the Blackhawk LLC interests violates the Due Process and Commerce Clauses of the United States Constitution and the comparable provisions of the Idaho Constitution. The state of Idaho has insufficient contacts with plaintiff to justify taxation of this income of this income in Idaho.

> 12. Alternatively, even if the gain on the sale of the Blackhawk LLC interests was taxable in Idaho, the Tax Commission erred in determining the amount of that gain. . . .

Within these paragraphs are references to the overarching issue—whether the Commission erred in finding that the gain was "business income"—as well as arguments relating to Idaho Code section 63-3027 and the Due Process and the Commerce Clauses of the U.S. Constitution. Therefore, this issue turns on whether the "unitary test" falls under the "business income" analysis under either Idaho Code section 63-3027, or the cited constitutional provisions. The short answer is that it falls under both because the unitary business test is part and parcel of the "business income" question.

First, the unitary-business principle was developed by the U.S. Supreme Court under the Commerce and Due Process Clauses of the U.S. Constitution to deal with mounting

5

constitutional inquiries concerning what and how much a state could tax multi-state businesses. *MeadWestvaco Corp. ex rel. Mead Corp. v. Illinois Dep't of Revenue*, 553 U.S. 16, 24 (2008). Generally, determining whether a business is unitary arises in courts under claims that a state violated the Due Process and Commerce Clauses by imposing an income-based tax on gains earned outside the state's borders. *See e.g. MeadWestvaco Corp. ex rel. Mead Corp.*, 553 U.S. at 24; *Hercules Inc. v. Comm'r*, 575 N.W.2d 111, 116 (Minn. 1998); *Luhr Bros. v. Dir. of Revenue, State of Mo.*, 780 S.W.2d 55, 57 (Mo. 1989). This Court has previously stated that establishing whether two businesses constitute a "unitary business" is "fundamental" to the determination of whether Idaho can apportion the income of a foreign, wholly-owned subsidiary as if it was the income of the parent corporation:

> [W]hether a number of business operations having common ownership constitute a single or unitary business or several separate businesses for tax purposes depends upon whether they are of mutual benefit to one another and on whether each operation is dependent on or contributory to others. This qualification, though not directly stated by the statute's literal language, is required by the theory underlying apportionment statutes, i.e., that the business income of a unitary business operating in several states cannot be precisely identified with particular states, and by the constitutional requirement that there must be some minimal connection between the interstate business activities generating the income and the state seeking to tax that income.

*Albertson's, Inc.*, 106 Idaho 810, 811, 815 n.4, 683 P.2d 846, 847, 851 n.4 (1984) (internal citations and quotation marks omitted) (quoting *Am. Smelting & Ref. Co. v. Idaho State Tax Comm'n*, 99 Idaho 924, 931, 592 P.2d 39, 46 (1979), *vacated sub nom. Asarco Inc. v. Idaho State Tax Comm'n.*, 445 U.S. 939 (1980) (overruling the Idaho Supreme Court's constitutional analysis but not the statutory interpretation of the Idaho Code)).

Second, while the unitary-business test typically arises in the constitutional context, Idaho Tax Administrative Rules have incorporated the unitary test as one method to determine "business income" under Idaho Code section 63-3027(a)(1):

> Application of the functional test is generally unaffected by the form of the property (for example, tangible or intangible property, real or personal property). Income arising from an intangible interest, for example, corporate stock or other intangible interest in a business or a group of assets, is business income when the intangible itself or the property underlying or associated with the intangible is or was an integral, functional, or operative component to the taxpayer's trade or business operations. Thus, while apportionment of income derived from transactions involving intangible property as business income may be supported by a finding that the issuer of the intangible property and the taxpayer are engaged

6

in the same trade or business, i.e., the same unitary business, establishment of such a relationship is not the exclusive basis for concluding that the income is subject to apportionment. It is sufficient to support the finding of apportionable income if the holding of the intangible interest served an operational rather than an investment function of mere financial betterment.

IDAPA 35.01.01.333.08. Under this rule, "business income" can be established by either the unitary-business test or by finding that the intangible interest serves an operational function—rather than a passive investment—as "an integral, functional, or operative component to the taxpayer's trade or business operations." *Id.*

The U.S. Supreme Court, however, has rejected the application of the operational-function test and the unitary-business test as distinct and separate principles. *MeadWestvaco Corp. ex rel. Mead Corp.*, 553 U.S. at 29. In *MeadWestvaco*, Mead, an Ohio corporation and wholly owned subsidiary of MeadWestvaco Corp., originally purchased an Illinois-based company that specialized in inkjet printing technology for $6 million. 553 U.S. 16, 19–20 (2008). Mead renamed the inkjet company Lexis. *Id.* at 20–21. Over the next 26 years, Mead developed Lexis into an electronic research service. *Id.* at 20. Then, in 1994, Mead sold Lexis to a third party for $1.5 billion, collecting a gain of just over $1 billion. *Id.* Mead did not report the gain as business income in Illinois. *Id.* Instead, Mead argued that the gain was "nonbusiness income that should be allocated to Mead's domiciliary State, Ohio, under Illinois' Income Tax Act." *Id.* The State of Illinois argued that the gain was business income subject to apportionment. *Id.* at 20–21. The trial court agreed with Illinois, holding that the two companies were not a unitary business but that Mead's gain was still business income under Illinois tax laws. *Id.* at 23. The appellate court affirmed on the basis of the state's operational-function test. *Id.* However, the U.S. Supreme Court reversed, explaining that it was error to only consider the operational-function test and remanded the case for a determination on the unitary-business test. *Id.* at 32. The Court explained:

> [O]ur references to 'operational function' in *Container Corp.* and *Allied–Signal* were not intended to modify the unitary business principle by adding a new ground for apportionment. The concept of operational function simply recognizes that an asset can be a part of a taxpayer's unitary business even if what we may term a 'unitary relationship' does not exist between the 'payor and payee.'

*MeadWestvaco Corp. ex rel. Mead Corp.*, 553 U.S. at 29.

Therefore, the "unitary business" question the district court addressed here was fundamental to both the constitutional and statutory issues raised by Noell Industries. As

7

required by the Idaho Rules of Civil Procedure, the complaint provided ample citations to statutory authority to lay the foundation for Noell Industries' requested relief, and the pleading put the Commission on notice of the claims brought against it. Indeed, the unitary-business principle is "the linchpin of apportionability in the field of state income taxation." *Mobil Oil Corp. v. Comm'r of Taxes of Vermont*, 445 U.S. 425, 439 (1980). The Commission should reasonably have been aware of the argument's inevitable assertion under the broader business-income analysis, as well as the constitutional inquiry into Idaho's ability to tax Noell Industries, a Virginia corporation.

### B. The district court did not err in finding that Noell Industries' gain from the sale of Blackhawk was nonbusiness income.

The Commission next contends that Noell Industries' gain from the sale of Blackhawk qualifies as business income because the "acquisition and management of Blackhawk, LLC constituted a necessary part of its business operations." The district court concluded that the gain was not apportionable after analyzing both the transactional and functional tests as laid out in case law, the Idaho Code, and Idaho's Income Tax Administrative Rules. The district court's analysis is correct.

Section 63-3027 of the Idaho Code "contains rules for determining the portion of a corporation's total income from a multistate business which is attributable to this state and therefore subject to Idaho's income tax." *Albertson's, Inc.*, 106 Idaho at 811, 683 P.2d at 847. This portion of the Idaho Code is Idaho's version of the Uniform Division of Income for Tax Purposes Act (UDITPA). *Id.* The statute divides a multistate corporation's income into two categories: business income and non-business income. *Id. See also* I.C. § 63-3027(a)(4); IDAPA 35.01.01.330. Business income is apportioned to Idaho under specific statutory formulas based on payroll, sales, and property, I.C. § 63-3027(i), while non-business income is allocated to the taxpayer's commercial domicile. I.C. § 63-3027(d)–(h). *See also Albertson's, Inc.*, 106 Idaho at 811, 683 P.2d at 847.

Section 63-3027(a)(1) of the Idaho Code provides two separate definitions for "business income." The first definition is the transactional test—"income arising from transactions and activity in the regular course of the taxpayer's trade or business." The second definition is the functional test—"income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayer's trade or business operations." *Union Pac. Corp. v. Idaho State*

8

*Tax Comm'n*, 136 Idaho 34, 38–39, 28 P.3d 375, 379–80 (2001) (quoting I.C. § 63-3027(a)(1)). *See also* IDAPA 35.02.02.332 through 333. Here, the Idaho Tax Commission is trying to apportion the income from a foreign holding company's sale of its wholly-owned subsidiary that conducted a portion of its business in Idaho. Accordingly, we must determine whether the gain qualifies as "business income" as defined in Idaho Code section 63-3027(a)(1) under either the (1) transactional test or (2) the functional test.

### 1. Transactional Test

The transactional test provides that business income is "income arising from transactions and activity in the regular course of the taxpayer's trade or business." I.C. § 63-3027(a)(1); IDAPA 35.01.01.332.01. The transaction or activity, however, "need not be one that frequently occurs in the trade or business." IDAPA 35.01.01.332.03. It is reasonable to conclude that transactions are done "in the regular course of a trade or business" where they "are customary in the kind of trade or business being conducted or are within the scope of what that kind of trade or business does." *Id.* In addition, "[i]ncome may be business income even though the actual transaction or activity that gives rise to the income does not occur in Idaho." IDAPA 35.01.01.332.02.

The district court examined two cases from the Midwest in reaching its decision wherein the respective appellate courts concluded that the gain arising from a holding company's sale of a subsidiary can qualify as business income if the holding company regularly engages in the buying and selling of subsidiaries; however, a one-time sale does not qualify. *Compare E.I. DuPont De Nemours & Co. v. Indiana Dep't of State Revenue*, 79 N.E.3d 1016, 1023 (Ind. T.C. 2017), *with PPG Indus., Inc. v. Dep't of Revenue*, 765 N.E.2d 34, 45 (Ill. App. 2002). Importantly, the Illinois and Indiana statutes at issue in these cases utilize similar language to UDITPA and Idaho to define business income, including the term "regular" to describe the trade and business operations that qualify as "business income" under the transactional test. I.C. § 63-3027(a)(1); *E.I. DuPont De Nemours & Co.*, 79 N.E.3d at 1022 (quoting Indiana Code § 6-3-1-20 (2001)); *PPG Indus., Inc.*, 765 N.E.2d at 42 (quoting 35 ILL. COMP. STAT. 5/1501(a)(1) (1994)).

On appeal, Noell Industries argues that it "does not have a trade or business," yet its tax returns list "investment" as its business activity, as well as its "product or service." Because of this entry, the district court concluded that Noell Industries is an "investment" company for the

purposes of its transactional-test analysis. The district court also found that Noell Industries "was essentially a holding company or parent company to Blackhawk." Under either business operation, Noell Industries does not appear to have regularly engaged in the trade or business of buying and selling subsidiary companies. Noell Industries only held interests in two companies: Blackhawk and another entity that leased real property to Blackhawk within Virginia. It did not purchase or sell interests over that seven year period except in the original purchase and sale of Blackhawk. Thus, Noell Industries' primary function was holding its interests in the two business entities over several years, relying primarily on Blackhawk for its income. While the business operations "need not be one that frequently occurs in the trade or business," IDAPA 35.01.01.332.03, a one-time sale over a seven-year span does not constitute a "regular" trade or business.

### 2. Functional Test

The Commission argues that Noell Industries satisfies the functional test in two ways: first, its income from the sale of Blackhawk "was income that arose from property acquired as a necessary part of its business." Second, the income from the gain of the sale "was income that arose from property managed as a necessary part of its business." We disagree.

The functional test provides that business income is "income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitutes integral or necessary parts of the taxpayer's trade or business operations." I.C. § 63-3027(a)(1). Rule 333.08 of Idaho's Income Tax Administrative Rules provides two methods for meeting the functional test: "business income" can be established either by (a) finding that the intangible interest serves an operational function—rather than a passive investment—as "an integral, functional, or operative component to the taxpayer's trade or business operations," or (b) by meeting the unitary-business test. IDAPA 35.01.01.333.08. Even though these methods would appear to be independent of each other, the U.S. Supreme Court has rejected the notion that the operational-function test and unitary-business test are separate principles. *MeadWestvaco Corp. ex rel. Mead Corp. v. Illinois Dep't of Rev.*, 553 U.S. 16, 29–32 (2008). Therefore, we must apply both tests.

### a. Operational or Passive Investment Test

Income from intangible property qualifies as "business income when the intangible property serves an operational function as opposed to solely an investment function." IDAPA

35.01.01.333.05. The court's inquiry "focuses on whether the property is or was held in furtherance of the taxpayer's trade or business, that is, on the objective characteristics of the intangible property's use or acquisition and its relation to the taxpayer and taxpayer's activities." *Id.* However, the "functional test is not satisfied where the holding of the property is limited to solely an investment function as is the case where the holding of the property is limited to mere financial betterment of the taxpayer in general." *Id.*

In *American Smelting and Refining Co.*, this Court addressed how to define business income where the Idaho Tax Commission sought alleged tax deficiencies against American Smelting and Refining Company (ASARCO). *Am. Smelting & Ref. Co.*, 99 Idaho at 927–30, 592 P.2d at 42–45. ASARCO was a multistate and multinational corporation engaged in mining, smelting, and refining activities. *Id.* at 927, 592 P.2d at 42. After an auditor "unitized" six corporations with ASARCO—each a wholly owned subsidiary of ASARCO—their incomes were combined for Idaho tax purposes and the State assessed against ASARCO three years' worth of tax deficiencies, plus interest. *Id.* at 927–30, 592 P.2d at 42–45.

On appeal, the Court explained that the " 'integral or necessary parts of the taxpayers' trade or business operations' refers to property which, though not absolutely essential to the conduct of the taxpayer's business, contributes to and is identifiable with the taxpayer's trade or business operations." *Id.* at 932, 592 P.2d at 47. Nevertheless,

> in order for such income to be properly classified as business income there must be a more direct relationship between the underlying asset and the taxpayer's trade or business. The incidental benefits from investments in general, such as enhanced credit standing and additional revenue, are not, in and of themselves, sufficient to bring the investment within the class of property the acquisition, management or disposition of which constitutes an integral part of the taxpayer's business operations. This view furthers the statutory policy of distinguishing that income which is truly derived from passive investments from income incidental to and connected with the taxpayer's business operations.

*Id.* at 933, 592 P.2d at 48. Importantly, the Court recognized that a broad interpretation of this definition of "business income" could render "all corporate investments . . . as property the acquisition, management or disposition of which constitutes an integral or necessary part of its trade or business operations." *Id.* Yet "such an approach would include virtually all income as business income and would in effect emasculate the provisions of UDITPA which provide for the allocation of income from specified tangible and intangible property." *Id.* at 932, 592 P.2d at

11

47. The Court then proceeded to examine the apportionability of ASARCO's dividends, interest income, and capital gains from the sale of stocks. *Id.* at 936–37, 592 P.2d at 51–52.

Here, the district court found that Noell Industries was merely a holding company. It held interests in only two business entities: Blackhawk and a Virginia company that leased real property to Blackhawk. Once Noell Industries transferred its net assets to Blackhawk in exchange for a majority interest, Noell Industries ceased most—if not all—of its business activity, notwithstanding its representation as an "investment" company on its tax returns. The 2010 sale of its interests in Blackhawk was a passive investment because the sale was not "an integral, functional, or operative component to the taxpayer's trade or business operations." IDAPA 35.01.01.333.08. Indeed, by selling Blackhawk, Noell Industries lost its primary source of income in exchange for the financial betterment of $120 million. This sale was not conducted "in furtherance of the taxpayer's trade or business," which was holding interests, but to discontinue it—*i.e.* discontinuing its interest in Blackhawk. As stated in the Income Tax Administrative Rules: "The functional test is not satisfied where the holding of the property is limited to solely an investment function as is the case where the holding of the property is limited to mere financial betterment of the taxpayer in general." 35.01.01.333.05.

### b. Unitary Business Test

Generally, "a State may not tax value earned outside its borders." *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982). However, a State may "tax an apportioned share of the value generated by the intrastate and extrastate activities of a multistate enterprise if those activities form part of a unitary business." *MeadWestvaco Corp. ex rel. Mead Corp.*, 553 U.S. at 19 (internal quotation marks omitted). This unitary-business principle is a constitutional creation under both the Commerce and Due Process Clauses. The Due Process Clause requires "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax, as well as a rational relationship between the tax and the values connected with the taxing State." *Id.* at 24. The Commerce Clause "forbids the States to levy taxes that discriminate against interstate commerce or that burden it by subjecting activities to multiple or unfairly apportioned taxation." *Id.* (internal citations and quotation marks omitted). Together, these clauses impose "distinct but parallel limitations on a State's power to tax out-of-state activities." *Id.*

Determining whether a business is a single, unitary, or several separate businesses for tax purposes is required "by the theory underlying apportionment statutes, I. e., [*sic*] that the business income of a unitary business operating in several states cannot be precisely identified with particular states, and by the constitutional requirement that there must be some minimal connection between the interstate business activities generating the income and the state seeking to tax that income." *Am. Smelting & Ref. Co.*, 99 Idaho at 931, 592 P.2d at 46. Idaho's Income Tax Administrative Rules have incorporated the unitary test into the business income analysis as a method of meeting the functional test, IDAPA 35.01.01.333.08, as well as defining "trade or business" to mean "the unitary business of the taxpayer, part of which is conducted in Idaho." IDAPA 35.01.01.331.02.

Originally, the unitary-business test required "unity of ownership, unity of operation, and unity of use." *Albertson's, Inc.,* 106 Idaho at 815, 683 P.2d at 851. More recently, the U.S. Supreme Court described the "'hallmarks' of a unitary relationship as functional integration, centralized management, and economies of scale." *MeadWestvaco Corp. ex rel. Mead Corp.*, 553 U.S. at 30. *See also* IDAPA 35.01.01.341.02. The U.S. Supreme Court also reiterated that "capital transactions can serve either an investment function or an operational function." *Id.* at 29 (quoting *Container Corp. of Am.*, 463 U.S. at 180 n.19).

Idaho's Income Tax Administrative Rules further define a "unitary business" as "a single economic enterprise that is made up either of separate parts of a single business entity or of a commonly controlled group of business entities that are sufficiently interdependent, integrated and interrelated through their activities so as to provide a synergy and mutual benefit that produces a sharing or exchange of value among them and a significant flow of value to the separate parts." IDAPA 35.01.01.340.01. The Idaho rules also utilize the same "hallmarks" from U.S. Supreme Court case law to determine the existence of a unitary business: functional integration, centralization of management, and economies of scale, which "provide evidence of whether the business activities operate as an integrated whole or exhibit substantial mutual interdependence." IDAPA 35.01.01.341.02.

In *Alberston's*, the Skaggs-Albertson's partnership formed two separate corporations in Texas, each of which was a holding company "for their respective 50% interests in the Skaggs-Albertson's operation." 106 Idaho at 812, 683 P.2d at 848. After examining the U.S. Supreme Court case *Container, Corp., of America v. Franchise Tax Board*, 463 U.S. 159 (1983), this

13

Court determined that Albertson's and its Texas subsidiary were a unitary business because of the close operational business relationship that existed between them. *Id.* at 816–17, 683 P.2d at 852–53. The Idaho Supreme Court based this decision on several key facts concerning the business operations:

> In almost every respect Albertson's operational relationship with Texas-Albertson's was as close as or greatly exceeded that which existed between Container Corp. and its subsidiaries. . . . Every Texas-Albertson's director and officer was an Albertson's employee or officer. Every decision made by Texas-Albertson's was actually made by Albertson's employees. In addition Albertson's employees performed other activities including keeping books, tax return preparation, payment of officers and directors, and preparation of corporate meeting documents. The parent in *Container* held or guaranteed half of the subsidiaries' long term debt, and Albertson's furnished all of Texas-Albertson's initial operating capital with no written agreements providing for repayment of capital or interest to Albertson's.

*Id.* Effectively, it was a unitary business because the parent company—Albertson's—controlled most, if not all, of the subsidiary's operations. The subsidiary was only a shell, a holding company, created in order to receive tax and liability benefits under Texas law. *Id.* at 812, 683 P.2d at 848.

The Commission cites to the Supreme Court of Tennessee's decision in *Blue Bell Creameries, LP v. Roberts*, 333 S.W.3d 59 (Tenn. 2011) to explain why Noell Industries is a unitary business with Blackhawk. Blue Bell is a Delaware limited partnership and Texas-based ice cream company that produces, sells, and distributes ice cream across multiple states. *Id.* at 62. After Blue Bell gained capital from a one-time stock transaction with its holding company, Tennessee's Department of Revenue assessed taxes on the capital gain because the stock transaction was "one part of a reorganization of the business entities that own [Blue Bell Creameries, LP] and profit from the Blue Bell ice cream business." *Id.* The Supreme Court of Tennessee held that the stock transaction served an operational function because the taxpayer "acquired and sold the 1,131 shares of stock solely as part of the reorganization of the entities profiting from the business." *Id.* at 70–71. The stock transaction did not diversify the business or "reduce[] risks associated with the ice cream business." *Id.* Rather, the reorganization and sale of the stock "served to increase net gain from the ice cream business." *Id.* Thus, the Tennessee court concluded, Blue Bell's income from the stock was unitary with its ice cream business. *Id.*

In contrast to these cases, Arizona's Board of Tax Appeals decided a case similar to the situation here, where a foreign corporation acquired an interest in an Arizona-based partnership.

*Western Phoenix, N.V. v. Arizona Dept. of Revenue*, 1994 WL 143279, at *1 (Ariz. Bd. Tax. App. 1994). The foreign corporation held no offices or employees in the U.S. and was not involved in the partnership's management. *Id.* The corporation "had no activity other than owning the partnership interest." *Id.* Yet when the corporation sold its interests to another company, and allocated the gain of the sale to Texas—where the acquisition's sale and negotiations occurred—Arizona audited the foreign corporation and concluded income from the sale was allocable business income. *Id.* Like here, the state taxing authority argued that the unitary-business test was inapplicable because the partnership business and foreign corporation "[were] one and the same." *Id.* at *2. The Arizona Board of Tax Appeals disagreed, holding that the gain from the sale was not apportionable business income because there was "no integration or interdependence of the basic operations" between the two businesses. *Id.* at *3. Indeed, the foreign corporation held "no real 'operation' "—"its sole business was its investment in the partnership." *Id.* at *3.

As the dissent points out, the 78.54% membership interest held by Noell Industries in Blackhawk conclusively determines that they are part of a commonly controlled group. IDAPA 35.01.01.344.02. Nevertheless, the situation is different from *Blue Bell* and the reverse of what occurred in *Albertson's*. Rather than dealing with a parent company with full control of the subsidiary holding company, Noell Industries is a parent holding company with no shared control or operations over Blackhawk. Noell Industries shared no centralized management, oversight, or headquarters with Blackhawk. Indeed, Noell Industries held no employees, payroll, or offices at all. While the companies utilized the services of the same accounting and legal firms, they did not share resources or employees. The only transactions between the companies consisted of the 2003 transfer of assets to Blackhawk, regular income from Blackhawk for the held interests, and the 2010 sale of those interests. This high-level separation of the companies—combined with Noell Industries' only role as a shell holding company—showcases substantial independence rather than the level interdependence required to manifest unity.

The primary common denominator between the two companies was their foundation by Mike Noell, but his presence at both companies alone does not suggest the level of oversight that the unitary principle requires for functional integration, centralized management, and economies of scale. As Blackhawk's President and CEO—indeed, as the founder of both companies—Mike Noell certainly provided experience and oversight, as the dissent reminds this Court. Yet the

15

record still showcases that Mike Noell was one voice of a six-member management team, and a "high level executive" who did not manage Blackhawk's day-to-day operations. Daily business operations were handled in an Executive Director of Operations and Vice President of Blackhawk. Sales decisions were handled by an appointed team. Marketing Decisions fell to the purview of the Vice President of Marketing, and so on. Blackhawk's wide range of officers and employees "had no involvement with Noell Industries." Thus, there was no centralized management.

In addition, while Noell Industries occupied the same role and business functions as Blackhawk prior to the 2003 reorganization, Blackhawk's creation relieved Noell Industries of those responsibilities. In the 2003 reorganization, Noell Industries effectively handed over the reins to Blackhawk to make, sell, and distribute tactical and combat gear. Noell Industries could have retained control, and oversight over Blackhawk, but it did not. Control and management of Blackhawk products passed from Noell's wholly-owned corporation to the multi-manager managed limited liability company—Blackhawk. Like in *Western Phoenix, N.V.*, Noell Industries' sole business between 2003 and 2010 was holding its investment in Blackhawk.

Because this type of gain does not meet the definition of "business income" under either the transactional test or functional test (including the unitary business test), we affirm the district court's conclusion that the gain from selling Blackhawk was nonbusiness income under Idaho Code section 63-3027. The Commission argues that this decision will open a tax loophole to companies, permitting them to dodge taxes through the creation of sham shell entities. We disagree. Our decision rests on a fact-intensive inquiry based on the extensive—and largely undisputed—findings of the district court. Moreover, this is not a case of a corporation dodging its tax obligations. Noell Industries reported the income from the sale to both Idaho and Virginia, but it only paid taxes on the gain as "business income" to Virginia because that was its commercial domicile. There has been no fraud or subterfuge shown in the record. This case clearly concerns a passive investment, the taxation of which is not apportionable to Idaho.

### IV. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court. Costs are awarded to Noell Industries as the prevailing party.

Justices BRODY and BEVAN **CONCUR.**

STEGNER, J., dissenting.

I respectfully dissent. I agree with the majority's conclusion that "[t]his case concerns a straightforward issue of tax law: whether the gain from the sale of an ownership interest in a legal entity constituted 'business income' under Idaho Code section 63-3027." However, I diverge from the majority's conclusion that the sale by Noell Industries, Inc. (Noell Industries), of its interest in Blackhawk Industries Products Group Unlimited, LLC (Blackhawk LLC), did not constitute business income attributable to Noell Industries.

This case was decided on cross motions for summary judgment. Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P 56(a). Here, based on the undisputed facts, Noell Industries was not entitled to summary judgment as a matter of law. Rather, the undisputed facts show that Noell Industries and Blackhawk LLC constituted a unitary business. Further, the sale of Blackhawk LLC constituted business income under the functional test. Accordingly, summary judgment should not have been granted to Noell Industries. Instead, it should have been granted in favor of the Tax Commission. I would reverse the grant of summary judgment, and remand the case for a determination of Noell Industries' tax liability.

A. **Background of Noell Industries and Blackhawk LLC.**

In 1993, Mike Noell incorporated Blackhawk Industries, Inc., in Virginia to develop and sell combat and tactical gear. (Blackhawk Industries, Inc., was renamed Noell Industries, Inc., in 2010. In order to avoid confusing Blackhawk Industries, Inc., with the similarly named Blackhawk LLC, Noell Industries will be used to refer to both Blackhawk Industries, Inc., and its successor Noell Industries.) The company was inspired by Noell's service as a U.S. Navy SEAL. In 2003, Mike Noell transferred the net assets of Noell Industries to a new company of his creation, Blackhawk LLC, in exchange for a 78.54% ownership interest in Blackhawk LLC. The remaining ownership (21.46%) was transferred to persons other than Noell Industries. Mike Noell at the time and throughout these proceedings was President and Chief Executive Officer (CEO) of Blackhawk LLC. He was also part of a six-member management team. While Noell Industries bears Mike Noell's name, Blackhawk LLC was his brainchild.

Blackhawk LLC is a Virginia limited liability company which operated in multiple states, including Idaho. In 2004, Blackhawk LLC established a physical presence in Idaho when it purchased and developed real property, commenced sales of its products, and hired employees

17

here. Then, in 2007, Blackhawk LLC leased a factory in Boise to serve as its "operation center" for the West Coast. The Boise factory was one of four U.S. factories that produced duty gear, body armor, holsters, and other outdoor and hunting products. By 2010, Blackhawk LLC "operated in substantially all of the states" and held approximately $20 million worth of real and personal property in Idaho.

Blackhawk LLC was the company that manufactured and sold the combat and tactical gear designed as a result of the vision and oversight of Mike Noell.[3] At the same time, Noell Industries, which was solely owned by Mike Noell, held a super-majority interest in Blackhawk LLC. Virtually all of Noell Industries' income came directly from Blackhawk LLC. For example, in 2009, Blackhawk LLC "generated $10,496,500 in income for Noell Industries." The annual income generated by Blackhawk LLC was recognized as business income as opposed to passive income.

In 2010, Noell Industries sold its 78.54% interest in Blackhawk LLC for a net gain of $120 million. Noell Industries reported the gain from the sale on its 2010 Idaho tax return, but did not apportion any of the gain to Idaho and reported "nearly all of the gain to goodwill." Idaho's state tax auditors, however, concluded that the gain was "business income" pursuant to Idaho Code section 63-3027, and the Idaho Tax Commission affirmed this decision. In its initial Notice of Deficiency Determination ("NODD"), the Tax Commission's Income Tax Audit staff calculated the total tax owed to be $4,481,875. The Tax Commission later reduced that amount to $1,423,520 after removing the penalty assessments in its final decision of November 8, 2017.

**B.  Noell Industries and Blackhawk LLC constitute a unitary business because the two companies were part of a common control group and had functional integration and centralized management.**

It is evident that Noell Industries and Blackhawk LLC constitute a unitary business. There is a constitutional doctrine that a state may not tax a corporation's income unless there is "some definite link" or "some minimum connection" between the state and the corporation it seeks to tax. *Miller Bros. v. Maryland*, 347 U.S. 340, 344–45 (1954). Without these minimum contacts, the state cannot tax the corporation's income. *See id.* The unitary business principle is a doctrine which allows states to determine whether there are sufficient contacts with the state in order to have business income apportioned to that state. Generally,

---

[3] According to the Business Activity Questionnaire prepared by Noell Industries' tax advisors, Mike Noell, as CEO and President of Blackhawk, was "responsible for directing the vision of Blackhawk Products and overseeing all aspects of Blackhawk Products, with a particular focus on product development."

18

if a taxpayer is carrying on a single "unitary" business within and without the state, the state has the requisite connection to the out-of-state activities of the business to justify inclusion in the taxpayer's apportionable tax base of all of the income generated by the combined effect of the out-of-state and in-state activities.

Walter Hellerstein, *State Taxation of Corporate Income from Intangibles:* Allied-Signal *and Beyond*, 48 Tax L. Rev. 739, 746 (1993). Accordingly, in order for business income to be apportioned to Idaho, it must first be ascertained whether Noell Industries and Blackhawk LLC constitute a unitary business to satisfy this due process demand. *See* IDAPA 35.01.01.340.

Pursuant to Idaho's regulations, a unitary business is
a single economic enterprise that is made up either of separate parts of a single business entity or of a commonly controlled group of business entities that are sufficiently interdependent, integrated and interrelated through their activities so as to provide a synergy and mutual benefit that produces a sharing or exchange of value among them and a significant flow of value to the separate parts.

*Id.*

1. <u>Noell Industries and Blackhawk LLC are part of a commonly controlled group.</u>

First, "separate corporations can be part of a unitary business only if they are members of a commonly controlled group." IDAPA 35.01.01.344. A "commonly controlled group" includes:

A parent corporation and any one (1) or more corporations or chains of corporations, connected through stock ownership (or constructive ownership) with the parent, but only if:

i. The parent owns stock possessing more than fifty percent (50%) of the voting power of a[t] least one (1) corporation[.]

IDAPA 35.01.01.344.02.

There can be little doubt that Noell Industries and Blackhawk LLC were both "commonly controlled" as that term is defined in the regulations governing this matter. It is undisputed that Noell Industries, the parent company, owned 78.54% of Blackhawk LLC. Consequently, based on the applicable regulations, Noell Industries and Blackhawk LLC are part of a commonly controlled group.

2. <u>Noell Industries and Blackhawk LLC are functionally integrated and have a centralized management.</u>

The Idaho Tax Commission's regulations provide additional principles for determining the existence of a unitary business. *See* IDAPA 35.01.01.342. Here, Noell Industries and Blackhawk LLC are functionally integrated and have centralized management.

19

First, Noell Industries and Blackhawk LLC are functionally integrated. An example of functional integration includes:

> Transfers or pooling of technical information or intellectual property, such as patents, copyrights, trademarks and service marks, trade secrets, processes or formulas, *know-how*, research, or development, provide evidence of functional integration when the matter transferred is significant to the business' operations.

IDAPA 35.01.01.342.01.c (italics added). There is no question that Mike Noell, the creator of both these enterprises, provided the "know-how" for their mutual success.

Second, Noell Industries and Blackhawk LLC have centralized management.

> Centralization of management exists when directors, officers, or other management employees jointly participate in the management decisions that affect the respective business activities and that may also operate to the benefit of the entire economic enterprise. Centralization of management can exist where the centralization is effected from a parent entity to a subsidiary entity to a parent entity, from (1) subsidiary entity to another, from (1) division within a single business entity . . . even when day-to-day management responsibility and accountability has been decentralized, so long as the management has an ongoing operational role with respect to the business activities. An operational role can be effected through mandates, consensus building, or an overall operational strategy of the business, or any other mechanism that establishes joint management.

IDAPA 35.01.01.342.02. An example of evidence that can establish centralized management includes evidence that "common officers participate in the decisions relating to the business operations of the different segments." *Id.* Additionally, centralized management exists "when management shares or applies knowledge and expertise among the parts of the business." *Id.*

Mike Noell was the sole owner of Noell Industries, and the CEO and President of Blackhawk LLC. According to Noell Industries' tax advisors, Mike Noell was "responsible for directing the vision of Blackhawk [LLC] and overseeing all aspects of Blackhawk [LLC], with a particular focus on product development." In other words, Mike Noell's participation in the performance of Blackhawk LLC was anything but passive. He was intimately involved in the decision-making of both Noell Industries and Blackhawk LLC. As a practical matter and as a legal matter, no one individual exercised more control than Mike Noell over these two entities. As a result, there was a "centralization of management" as that phrase is used in the applicable regulations. Consequently, given the regulations that govern whether an entity is a unitary business, the fact that Mike Noell occupied these two critical executive positions strongly

supports the conclusion that a unitary business existed between Noell Industries and Blackhawk LLC.

The district court concluded that Noell Industries and Blackhawk LLC lacked unity. The district court concluded that the two businesses were not functionally integrated and did not have any centralized management. However, based on the undisputed facts noted above, the district court's conclusions were clearly erroneous. The two companies were functionally integrated due to shared know-how and oversight from Mike Noell. Blackhawk LLC is a necessary part of Noell Industries. Further, the two companies shared centralized management, particularly Mike Noell. The conclusion that Noell Industries and Blackhawk LLC constitute a unitary business is inescapable. The next question which must be answered is whether the sale of its interest in Blackhawk LLC constituted business income attributable to Noell Industries.

**C.      The sale of the interest in Blackhawk LLC constituted business income through the functional test supplied by statute.**

I begin with the district court's correct articulation of the presumption and burden of proof as they relate to the application of the functional test, which is critical to this analysis. As noted by the district court

> [u]nder the functional test, "business income" includes income from "the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitutes integral or necessary parts of the taxpayer's trade or business operations." I.C. § 63-3027(a)(1). Importantly, "gains or losses and dividend and interest income from stock and securities of any foreign or domestic corporation shall be presumed to be income from intangible property, the acquisition, management, or disposition of which constitutes an integral part of the taxpayer's trade or business. I.C. § 63-3027(a)(1). This presumption may only be overcome by "clear and convincing evidence to the contrary." *Id.* Thus the court must presume the gain realized by Noell Industries on its sale of its interest in Blackhawk LLC satisfies the functional test unless Noell Industries presents clear and convincing evidence that it does not.

While the district court (and on appeal, the majority) are obligated to presume the gain recognized by Noell Industries satisfied the functional test (and as a result that the gain would be taxable by Idaho) it is important to remember this case was decided on summary judgment. This means that in order to decide the case in favor of Noell Industries, the district court was required not only to determine that there were no genuine questions of material fact, but to do so applying

21

an increased burden of proof, "clear and convincing evidence."[4] *See* I.R.C.P. 56(a). This is an extraordinary showing at summary judgment.[5] Given the clear and convincing burden of proof Noell Industries bore, it would require a substantial showing for Noell Industries to be granted summary judgment. For the reasons outlined in this opinion, not only was this showing not made or supported by the record, the evidence in the record supports the conclusion that the sale of Blackhawk LLC constituted business income under the functional test. Accordingly, the Tax Commission's motion for summary judgment should have been granted, and Noell Industries' motion for summary judgment should have been denied.

Idaho Code section 63-3027 provides two separate definitions for business income. The relevant definition here is known as the functional test. This includes "income from the acquisition, management, or disposition of tangible and intangible property when such acquisition, management, or disposition constitute integral or necessary parts of the taxpayer's trade or business operations." *Union Pac. Corp. v. Idaho State Tax Comm'n*, 136 Idaho 34, 38, 28 P.3d 375, 379 (2001) (quoting I.C. § 63-3027(a)(1)).

The applicable regulations provide guidance on the application of the functional test to determine whether certain commercial activity is business income.

> Application of the functional test is generally unaffected by the form of the property (for example, tangible or intangible property, real or personal property). Income arising from an intangible interest, for example, corporate stock or other intangible interest in a business or a group of assets, is business income when the intangible itself or the property underlying or associated with the intangible is or was an integral, functional, or operative component to the taxpayer's trade or business operations. Thus, while apportionment of income derived from transactions involving intangible property as business income may be supported by a finding that the issuer of the intangible property and the taxpayer are engaged in the same trade or business, i.e., the same unitary business, establishment of such a relationship is not the exclusive basis for concluding that the income is subject to apportionment. It is sufficient to support the finding of apportionable income if the holding of the intangible interest served an operational rather than an investment function of mere financial betterment.

---

[4] This heightened burden is only applicable when the moving party is the party that has the burden of proof at trial. In contrast, when the nonmoving party carries the burden of proof at trial, our case law makes clear that on a motion for summary judgment we do not consider whether a party has produced *clear and convincing evidence*, but only "whether the evidence is sufficient to create a triable issue of fact." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 599, 150 P.3d 288, 292 (2006) (citation omitted). However, for the party who carries the burden of proof at trial to be entitled to judgment as a matter of law, the sufficiency of the evidence would logically have to satisfy the burden of proof. *See* I.R.C.P. 56(a).

[5] The clear and convincing evidence standard only applies to the functional test, not the unitary business test.

IDAPA 35.01.01.333.08. Notably, the conclusion that Noell Industries and Blackhawk LLC constitute a unitary business helps support the conclusion that this sale was business income. *See id.* ("[A]pportionment of income derived from transactions involving intangible property as business income may be supported by a finding that the issuer of the intangible property and the taxpayer are engaged in the same trade or business, i.e., the same unitary business[.]"). However, evidence of a unitary business alone is generally insufficient evidence. *See id.* There must be more. Another method of satisfying the functional test is a finding that "the holding of the intangible interest served an operational rather than an investment function of mere financial betterment." *Id.*

The regulations provide guidance on the treatment of operational functions and investment functions.

> Under the functional test, income from intangible property is business income when the intangible property serves an operational function as opposed to solely an investment function. The relevant inquiry focuses on whether the property is or was held in furtherance of the taxpayer's trade or business, that is, on the objective characteristics of the intangible property's use or acquisition and its relation to the taxpayer and the taxpayer's activities. The functional test is not satisfied where the holding of the property is limited to solely an investment function as is the case where the holder of the property is limited to mere financial betterment of the taxpayer in general.

IDAPA 35.01.01.333.05. Passive income, or investment income, generally mean "income derived from a business, rental, or other income-producing activity that the earner does not directly participate in or has no immediate control over." *Passive income*, BLACK'S LAW DICTIONARY (11th ed. 2019). Business income, as used in this context, means income from any activity that meets the "transactional test" or the "functional tests," as defined by the Tax Commission's regulations. *See* IDAPA 25.01.01.331.01. Neither the transactional test nor the functional test are satisfied by mere passive investment.

Noell Industries argues that it was merely a passive investor in Blackhawk LLC. Notably, in all the years leading up to Noell Industries' sale of Blackhawk LLC, Noell Industries recognized the gain from Blackhawk LLC's activities as "business income." However, Mike Noell was not a passive investor in Blackhawk LLC. He was the acting President and CEO of Blackhawk LLC. Additionally, he was responsible for oversight of product development for Blackhawk LLC. The income realized by Blackhawk LLC was, in a very real way, dependent on

Mike Noell's contribution to that entity as its spiritual father and its CEO and President.[6] Were Mike Noell not the CEO and President of Blackhawk LLC, the investment by Noell Industries in Blackhawk LLC might have been correctly characterized as a "passive investment." However, with Mike Noell occupying those two roles, it's impossible to conclude the income was passive.

Applying the functional test to these facts yields the conclusion that the sale of Blackhawk LLC constituted business income to Noell Industries. In order for Noell Industries to avoid its apportionable Idaho income tax, it would be necessary to find that the functional test does not apply. If Mike Noell had sold his interest to an entity other than one *controlled by him*, I might be persuaded that the apportionable income realized by Noell Industries is not due. However, given the structure of the entities, the presumption that the functional test is satisfied, and the obligation of Noell Industries to prove by clear and convincing evidence that the functional test does not apply, I cannot concur in the majority's analysis.[7]

---

[6] In order to reach its decision, the district court substantially minimized Mike Noell's significant management responsibility at Blackhawk LLC. As noted, Mike Noell was both the CEO and President of Blackhawk LLC. While it is true that other managers played significant managerial roles in Blackhawk LLC, to reach the result the district court reached, it had to *ignore* the fact that Mike Noell was both the President and CEO of Blackhawk LLC.

> Under the functional test, business income need not be derived from transactions or activities that are in the regular course of the taxpayer's own particular trade or business. It is sufficient, if the property from which the income is derived is or was an integral, functional, or operative component used in the taxpayer's trade or business operations, or otherwise materially contributed to the production of business income of the trade or business, part of which trade or business is or was conducted within Idaho.

IDAPA 35.01.01.333.03. It is not possible to conceive of Blackhawk LLC achieving the success it did without Mike Noell at its helm. Yet that is precisely what the district court did.

[7] One of the ways in which to analyze whether Noell Industries owes tax on the gain it realized on the sale of Blackhawk LLC, is to consider whether the gain would be taxable if Noell Industries did not exist. In other words, assume the 78.54% interest in Blackhawk LLC was owned by Mike Noell in his individual capacity. There can be little doubt under these facts that Mike Noell would owe Idaho income tax. The gain would be attributable to him because he was the CEO and President of Blackhawk LLC. The gain would be the result of his work as CEO and President and the creative genius behind product development. If Mike Noell were somehow unconnected with Blackhawk LLC, and its success was in no way connected to him, he would not owe Idaho income tax. (In other words, it's instructive to view Noell Industries as a "straw man." Without this "straw man" existing between Mike Noell and Blackhawk LLC, there would be no question regarding the taxability of the income. Yet, the district court (and the majority) concludes that because there is now an intermediary entity between Mike Noell and Blackhawk LLC, somehow the gain that would otherwise be taxable is magically not taxable.) This is not how the tax code operates. There is symmetry to the tax code preventing a taxpayer from creating a straw man which would enable the avoidance of tax. The investment Noell Industries made in Blackhawk LLC, while characterized solely as an investment, is not merely a passive investment because of Mike Noell's active management of Blackhawk LLC. Noell Industries' gain is not passive income any more than it was *before* the sale of Blackhawk LLC. Rather, it is business income *because of* Mike Noell's contribution to Blackhawk LLC's success. However, Noell Industries seeks to avoid imposition of Idaho state income tax because it maintains that Noell Industries only held ownership in Blackhawk LLC as a passive investor. Noell Industries' argument only makes sense if Mike Noell's significant contribution to Blackhawk LLC as its CEO and President is disregarded.

**D.     Conclusion.**

To recap, Noell Industries was granted summary judgment even though it had the burden to prove that the sale of Blackhawk LLC did not satisfy the functional test by clear and convincing evidence. I think the district court erred in granting summary judgment to Noell Industries, not only because of the heightened burden of proof Noell Industries bore to prove that the functional test was not satisfied, but also because the existing statutes and regulations governing this transaction lead to a conclusion contrary to that drawn by the district court. I would reverse, and grant summary judgment in favor of the Tax Commission because the undisputed facts demonstrate that the gain realized by Noell Industries qualifies as business income that can be apportioned to Idaho. However, a question of fact remains as to Noell Industries' tax liability. Accordingly, I would remand the case for a determination of that liability. For these reasons, I respectfully dissent.

Chief Justice BURDICK concurs in the dissent.